*Summer Ledford v. Jenway Contracting, Inc.*, No. 3, September Term, 2024. Opinion by Eaves, J.

**MD. CODE ANN., LABOR AND EMPLOYMENT § 9-509(a)— EMPLOYER'S LIABILITY — EXCLUSIVITY**

The Supreme Court of Maryland held that an employer that complies with the provisions of the Workers' Compensation Act ("the Act") enjoys immunity from suit, including against a wrongful death action brought by a non-dependent adult child for the death of a parent, and that the employer's exclusive liability is cabined to the Act. The Supreme Court further held that this immunity does not violate Article 19 of the Maryland Declaration of Rights.

Circuit Court for Baltimore County
Case No. C-03-CV-22-000661
Argued: September 5, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 3

September Term, 2024

SUMMER LEDFORD

v.

JENWAY CONTRACTING, INC.

Fader, C.J.,
Watts,
Booth,
Biran,
Eaves,
Killough,
Getty, Joseph M.
  (Senior Justice, Specially Assigned),

JJ.

Opinion by Eaves, J.
Watts, Biran, and Killough, JJ., dissent.

Filed: July 1, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

# I
# INTRODUCTION

This case concerns Maryland's Workers' Compensation Act ("the Act") (colloquially referred to as the "Grand Bargain"),[1] codified as Title 9 under the Labor and Employment Article ("L&E") of the Maryland Annotated Code (2016 Repl. Vol.). Enacted over 100 years ago in the age of industrialization,[2] the Act sought to remedy what was then a new and pervasive problem: the fact that "tort law overwhelmingly favored employers."[3] Employees who suffered workplace injuries routinely found themselves unable to mount a successful negligence claim against their employer due to the doctrines of contributory negligence and assumption of the risk.[4] And because the age of industrialization ushered in the idea that men served as the primary breadwinners and women as homemakers and caregivers to children,[5] an injured worker posed a threat to the economic security of the entire family unit.

The Act aimed to alleviate this societal problem via a legislative quid pro quo (hence the phrase, Grand Bargain). For employees, their negligence claims against their employers

---

[1] Dan Friedman, *Jackson v. Dackman Co.: The Legislative Modification of Common Law Tort Remedies Under Article 19 of the Maryland Declaration of Rights*, 77 Md. L. Rev. 949, 974 n.122 (2018).

[2] 1914 Md. Laws, ch. 800; Friedman, *supra* n.1 at 974.

[3] Friedman, *supra* n.1, at 974.

[4] *Id.*

[5] Jill Maxwell, *Leveraging the Courts to Protect Women's Fundamental Rights at the Intersection of Family-Wage Work Structures and Women's Role as Wage Earner and Primary Caregiver*, 20 Duke J. Gender L. & Pol'y 127, 131 (2012).

would be removed from the court system (for the most part) and into a "no-fault system[]" where employers would automatically be liable for the vast majority of workplace injuries.[6] The tradeoff? Employers were assured that, so long as they complied with the Act's provisions, their liability would (1) extend to only an injured employee or, in the case of fatal injuries, the employee's dependents[7] and (2) be limited to pre-calculated and determined amounts of compensation.[8]

In the case before us, John Ledford was employed by Respondent, Jenway Contracting, Inc. ("Jenway"). In February 2021, while in the course of his employment, Mr. Ledford tragically fell from a retaining wall and suffered fatal injuries. At the time of Mr. Ledford's death, he was survived by his adult, non-dependent daughter, Petitioner, Summer Ledford. As a non-dependent, Ms. Ledford was unable to receive death benefits under the Act,[9] so instead she filed a claim against Jenway under Maryland's Wrongful Death Act ("WDA"), codified at § 3-904 of the Courts and Judicial Proceedings Article ("CJP") of the Maryland Annotated Code (2020 Repl. Vol.).

Jenway moved to dismiss Ms. Ledford's complaint on the grounds that the Act limits its liability to two groups of people, injured workers and their dependents, and that neither of the Act's two exceptions applied to permit Ms. Ledford's WDA claim to go

---

[6] Friedman, *supra* n.1, at 974.

[7] From this point forward, for brevity's sake, we will use the term "employee" in the context of the Act to refer to both employees and their eligible dependents.

[8] *See* Friedman, *supra* n.1, at 974.

[9] L&E § 9-683(a).

forward. The Circuit Court for Baltimore County agreed, dismissing Ms. Ledford's complaint, and the Appellate Court affirmed. We issued a writ of certiorari in this case[10] to answer the following questions:

1. Does L&E § 9-509's exclusivity provision bar a deceased covered employee's non-dependent, adult child from pursuing claims against the deceased covered employee's employer?

2. If so, does L&E § 9-509 conflict with Article 19 of the Maryland Declaration of Rights?[11]

As explained more thoroughly below, absent an applicable exception, L&E § 9-509's exclusivity provision bars adult, non-dependent children from filing a claim against their deceased parent's employer, and that interpretation does not run afoul of Article 19 of the Maryland Declaration of Rights. Therefore, we will affirm the judgment of the Appellate Court.

---

[10] *Ledford v. Jenway Contracting, Inc.*, 486 Md. 597 (2024).

[11] As originally presented to us, Ms. Ledford's sole question was, "Whether the lower court erred, given that the General Assembly in its plain language specifically limited the exclusivity clause to 'dependents' in Md. Lab. & Empl. Art. § 9-509, by extending it to non-dependents." (Citation modified). We have rephrased that question, as indicated above. *See United Parcel Serv. v. Strothers*, 482 Md. 198, 205 (2022). After oral argument, we instructed the parties to submit supplemental briefing on the second question above.

3

## II
## BACKGROUND

**A.** ***The Relevant Law: Maryland's Workers' Compensation Act and Wrongful Death Act***

This case requires us to examine the two statutory provisions noted above: L&E § 9-509 and CJP § 3-904. Specifically, we must determine whether the Act's exclusivity provision precludes Ms. Ledford's action under the WDA. We will begin by laying out those salient provisions and some notable history.

The Act's exclusivity provision specifies that an employer's liability under the title is "exclusive[,]" L&E § 9-509(a), and that, barring exceptions contained in the Act, the compensation an employer provides under the Act "to *a covered employee or the dependents of a covered employee* is in place of any right of action against any person[,]" *id.* § 9-509(b) (emphasis added). In other words, an employee is limited in their recovery for injuries sustained within the scope of employment, and they are precluded from bringing any action against an employer. To enjoy this immunity from liability, however, an employer must "secure compensation in accordance with" the Act, *id.* § 9-509(c), and the injury to the employee must not have been caused by the employer's deliberate act, *id.* § 9-509(d).

A Maryland wrongful death claim is a creature of statute. The WDA originally was enacted in 1852 to abrogate the common law principle that a personal action died with the person. 1852 Md. Laws, ch. 299; *Wadsworth v. Sharma*, 479 Md. 606, 617–18 (2022). Unlike a survivorship action, a claim under the WDA is not brought in a derivative or representative capacity, but rather, is brought by aggrieved family members to recover their

4

own loss accruing from the decedent's death. *Spangler v. McQuitty*, 449 Md. 33, 54–61 (2016). Prior to 1997, a non-dependent adult child could not bring a wrongful death claim to recover damages for the death of a parent. The WDA was revised in 1997 to allow, as in this case, a non-dependent, adult child to sue for the death of a parent. 1997 Md. Laws, ch. 313; CJP § 3-904(e). Such an action can seek damages for "mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable." CJP § 3-904(e). Most, if not all, of these types of damages are unavailable under the Act.

## B. Procedural History

At the time of Mr. Ledford's death, Ms. Ledford was not financially dependent on her father. Ms. Ledford was, therefore, ineligible for workers' compensation benefits because she was not a dependent of a covered employee. Roughly one year after her father's death, Ms. Ledford instead filed in the Circuit Court for Baltimore County a wrongful death claim alleging negligence against Jenway, which she later amended.

Jenway moved to dismiss the amended complaint,[12] arguing that L&E § 9-509(a)–(b) sets forth both an employer's exclusive liability and a covered employee's exclusive remedy, thereby immunizing Jenway from Ms. Ledford's wrongful death claim. Ms. Ledford argued in turn that L&E § 9-509(b) expressly limited the scope of employer immunity to only two classes of plaintiffs: covered employees and dependents of covered

---

[12] Jenway filed its motion to dismiss in response to Ms. Ledford's original complaint. After Ms. Ledford amended her complaint, Jenway filed a line with the circuit court, indicating that its earlier-filed motion to dismiss was to be construed as its response to the operative amended complaint.

5

employees. Not belonging to either category, Ms. Ledford argued that the Act posed no impediment to her wrongful death claim.

After a hearing, the circuit court issued a November 2022 opinion and order in which it granted Jenway's motion to dismiss. Relying on this Court's opinion in *Knoche v. Cox*, 282 Md. 447, 453 n.2 (1978), the circuit court concluded "that the broad limitations on an employer's liability for work[-]related injuries applie[d] to bar a party's otherwise valid wrongful death claim[,]" even though that party "was never eligible for workers' compensation benefits." Barring application of either of the Act's express exceptions, the circuit court believed that "the structure of the [Act] was intended to govern *all claims for damages* arising out of a work-related injury." (Emphasis added). Thus, the circuit court dismissed Ms. Ledford's amended complaint. Ms. Ledford noted a timely appeal.

In a reported opinion, the Appellate Court of Maryland affirmed the circuit court. *Ledford v. Jenway Contracting, Inc.*, 259 Md. App. 534, 548 (2023). In reaching that holding, the Appellate Court looked to the Act's plain language, the Act's legislative purpose, and pertinent case law, reaching the "inescapable conclusion" that an "employer's liability and any recovery resulting from that liability are exclusive to the Act, regardless of whether an otherwise proper wrongful death plaintiff is entitled to benefits under the Act." *Id.* Because Ms. Ledford was not financially dependent on her father, and because neither of the exceptions to the Act's exclusivity provision applied, she was barred from recovery. *Id.* at 549.

**III**
**STANDARD OF REVIEW**

The issue before this Court involves statutory interpretation, which is a question of law that we review without deference. *See Bd. of Educ. of Prince George's Cnty. v. Marks-Sloan*, 428 Md. 1, 18 (2012) (citing *Moore v. State*, 388 Md. 446, 452 (2005); *Collins v. State*, 383 Md. 684, 688 (2004)).

**IV**
**ANALYSIS**

The parties' contentions have remained largely unchanged from the Appellate Court to this Court. Ms. Ledford notes that, as the non-dependent daughter of the decedent, she has no right to workers' compensation death benefits, which are available only to covered employees, under the Act's exclusivity provision. Because she has no right to those benefits, Ms. Ledford argues that she is not limited by the Act's exclusivity provision and that the lower courts erred in holding otherwise. Ms. Ledford primarily claims support for that argument from L&E § 9-509(b), which says that compensation paid pursuant to the Act "to a covered employee or the dependents of a covered employee is in place of any right of action against any person." If the General Assembly intended for the Act's exclusivity to apply to *all* potential litigants, she argues, it would have stopped at L&E § 9-509(a), which states, "[e]xcept as otherwise provided in this title, the liability of an employer under this title is exclusive." This, Ms. Ledford insists, evinces the General Assembly's intent to limit the exclusivity clause to actions from *only* covered employees—not non-dependent children of covered employees—consistent with the legislative goal of limiting double recovery.

7

Moving away from the Act's plain language, Ms. Ledford places weight on the fact that the Act (including its exclusivity provision) was passed in 1914 and that the WDA was revised in 1997 to grant non-dependent adult children a cause of action thereunder.[13] According to Ms. Ledford, the 1997 General Assembly, therefore, "knew it was granting the right to sue to a class of plaintiffs that generally d[id] not have the right to workers' compensation death benefits[;]" "if [the General Assembly] intended [the Act] to limit this [then-newly granted] right, it would have so stated."

Ms. Ledford acknowledges that the Act contemplates and limits the liability of an employer to non-dependents in L&E § 9-684 but argues that this does not prevent her from seeking compensation because the costs listed under L&E § 9-684 are reimbursements, not compensation.

Finally, Ms. Ledford asserts that Jenway's interpretation of L&E § 9-509 violates Article 19 of the Maryland Declaration of Rights because such an interpretation would deny "an entire class of persons access to the courts, and [a] remedy for [an] injury, as guaranteed by [Article 19.]"

On the other hand, Jenway makes four arguments that Ms. Ledford is prevented from recovery via the Act's exclusivity provision for multiple reasons. First, Jenway says

---

[13] In her brief, Ms. Ledford asserts that the revision to the WDA that granted non-dependent children the right to file a wrongful death claim for the loss of a parent was established in the "1999 amendment[.]" We presume, however, that Ms. Ledford intended to cite to the WDA's 1997 revision. *See* 1997 Md. Laws, ch. 318 (noting that Chapter 318 was enacted for the purposes of, among others, "establishing that a beneficiary may be entitled to noneconomic damages in a wrongful death action for the death of . . . certain parents of a child *who is not a minor child*[.]" (emphasis added)).

that the exclusivity provision clearly limits an employer's liability under the Act against any party so long as the employer complies with the requirements of the Act. Jenway notes that L&E § 9-509 explicitly lists two situations when an employer *does not* enjoy the benefits of exclusivity and that neither exception applies in this case. Second, Jenway posits that the General Assembly already contemplated scenarios like Ms. Ledford's when it enacted L&E § 9-684. Thus, Jenway believes that this provision "provides a clear and unambiguous answer to the exclusivity provision's lack of addressing non-dependents." Third, Jenway argues that to subject employers to suit outside the Act, when an employer otherwise has complied with the Act's requirements, would undo the quid pro quo that the Grand Bargain was intended to effectuate. Fourth, Jenway argues that its interpretation does not offend Article 19 for two reasons: (1) the exclusivity provision does not "abrogate or modify a traditional remedy," and (2) the Act "created a new process for obtaining a remedy that is a reasonable restriction on access to the courts and benefits significantly more Marylanders than it harms."

For the reasons discussed below, we agree with Jenway's interpretation of the Act and affirm the judgment of the Appellate Court.

## A.   *Absent an Explicit Exception Within the Act, an Employer Is Immune from a Wrongful Death Claim Filed by a Non-Dependent Adult Child*

The Act's history has been well studied by this Court. Enacted in 1914, the Act "generally requires an employer 'to pay workers' compensation benefits to an employee who suffers an accidental personal injury in the course of employment, regardless of whether the employer is at fault for the injury.'" *Marks-Sloan*, 428 Md. at 35 (quoting

9

*Franch v. Ankney*, 341 Md. 350, 357–58 (1996)). The Act embodies the balance struck by the General Assembly when "on one hand, the Act took away employees' rights to sue employers for negligence, yet, on the other hand it ensured employees the 'right to quick and certain compensation for injuries sustained during the course of their employment, regardless of fault.'" *Id.* at 36 (quoting *Rodrigues-Novo v. Recchi Am., Inc.*, 381 Md. 49, 56 (2004)). In other words, the Act was created to efficiently and uniformly handle employment injury claims, ensuring that employees and their families could receive swift compensation without a burdensome gap in income, and employers could provide that compensation without fear of costly negligence suits. *See, e.g.*, *Polomski v. Mayor & City Council of Balt.*, 344 Md. 70, 77 (1996) ("[T]he Act provides employees suffering from work-related accidental injuries, regardless of fault, with a certain, efficient, and dignified form of compensation. In exchange, employees abandon common law remedies, thereby relieving employers from the vagaries of tort liability.").

To that end, the General Assembly enshrined the lynchpin of the Grand Bargain in the Act's exclusivity provision, L&E § 9-509, which details both the limitations on an employer's liability and an employee's right to compensation. "The rationale behind the exclusivity rule is that 'the employer has undertaken the burden of supplying workmen's compensation insurance in return for immunity from suit.'" *Marks-Sloan*, 428 Md. at 38 (quoting *Hauch v. Connor*, 295 Md. 120, 127 (1983)). This provision is the subject of the case at hand, and, in examining it and other related provisions throughout the Act, we apply our well-established principles of statutory interpretation. As we recently noted:

10

"The cardinal rule of statutory interpretation is to ascertain and effectuate" the General Assembly's purpose and intent when it enacted the statute. *Hollingsworth v. Severstal Sparrows Point, LLC*, 448 Md. 648, 655 (2016). "We assume that the General Assembly's intent is 'expressed in the statutory language' and therefore begin our analysis with the plain language of the statute." *Spevak*, 480 Md. at 571–72 (quoting *Moore v. RealPage Util. Mgmt., Inc.*, 476 Md. 501, 510 (2021)). We begin this task by looking to the normal, plain meaning of the text, "ensur[ing] that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Id.* at 572 (quoting *Moore*, 476 Md. at 510).

And while we focus on the statute's plain text, we avoid reading "statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *Lockshin v. Semsker*, 412 Md. 257, 275 (2010). Instead, we analyze the statutory scheme as a whole, considering the "purpose, aim or policy of the [General Assembly] reflected in that statute." *McClanahan v. Wash. Cnty. Dep't of Soc. Servs.*, 445 Md. 691, 701 (2015) (quoting *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 463 (1991)). The Court avoids constructions that are "illogical, unreasonable, or inconsistent with common sense." *Spevak*, 480 Md. at 572. If we are satisfied that the statute's plain language is unambiguous and clearly communicates the General Assembly's intent, then our inquiry ends, "and we apply the plain meaning of the statute." *Hollingsworth*, 448 Md. at 655 (quoting *McClanahan*, 445 Md. at 701).

*Zukowski v. Anne Arundel County*, 490 Md. 243, 264–65 (2025).

Additionally, because we are analyzing the relationship between one section of a much larger statutory scheme (L&E § 9-509) and a standalone provision (CJP § 3-904), we must "try to read [the] statutes in harmony, so that all provisions can be given reasonable effect." *Yox v. Tru-Rol Co.*, 380 Md. 326, 337 (2004) (citing *Balt. Gas & Elec. Co. v. Pub. Serv. Comm'n of Md.*, 305, Md. 145, 157 (1986)). Indeed, "[w]e presume that the [General Assembly] intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Marks-Sloan*,

428 Md. at 19 (quoting *Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Marcas, L.L.C.*, 415 Md. 676, 685 (2010)).

Lastly, as a remedial statute, we construe the Act "as liberally in favor of the injured employees as its provisions will permit in order to effectuate its benevolent purposes." *United Parcel Serv. v. Strothers*, 482 Md. 198, 213 (2022) (quoting *Montgomery County v. Deibler*, 423 Md. 54, 61 (2011)). While mindful of that remedial purpose, we still must exercise judicial restraint and avoid "stifl[ing] the plain meaning of the Act . . . so that the injured worker may prevail." *Id.* (alterations in original) (quoting *Deibler*, 423 Md. at 61).

We begin our analysis with the exclusivity provision. The relevant portions of the provision read:

> (a) Except as otherwise provided in this title, the liability of an employer under this title is exclusive.

> (b) Except as otherwise provided in this title, the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person.

L&E § 9-509(a)–(b). Both subsections (a) and (b) begin with some key words: "[e]xcept as otherwise provided in *this title*[.]" *Id.* (emphasis added). This prefatory language makes plain that any exceptions to an employer's liability or an injured employee's compensation will be found within the Act itself. Thus, absent an explicit exception in the Act, no other statutory provision can expand or shrink either an employer's liability or an employee's rights.

And L&E § 9-509 does just that. In the exclusivity provision itself, the statute states that, should an employer "fail[] to secure compensation in accordance with [the Act]," and

12

should an employee sustain an injury or death, an employee (or representative) may bring either a "claim for compensation under [the Act]" or "an action for damages."[14] L&E § 9-509(c)(1). Even if an employer complies with the Act, § 9-509 still affords an employee (or representative) the same option if an employee is injured or killed as a result of an employer's deliberate act. *Id.* § 9-509(d).

Ms. Ledford agrees that neither exception applies here. She instead argues that L&E § 9-509(b) prohibits only "a covered employee or the dependents of a covered employee" from bringing an action against an employer outside of the Act. Because non-dependent children are not mentioned in that subsection, Ms. Ledford believes that they are not subject to that prohibition. Yet, as noted above, the prefatory language of L&E § 9-509(a) permits an exception to an employer's limited liability only to the extent that it *explicitly* is stated in the Act. Therefore, despite the Act's silence as to non-dependents in subsection (b), Ms. Ledford cannot point to—and we cannot find—any other exception within the Act that extends an employer's liability to an adult, non-dependent child's wrongful death claim.

We also note that subsection (a) speaks in absolute terms: "[T]he *liability* of an employer *under this title* is *exclusive*." *Id.* § 9-509(a) (emphases added). "Exclusive" means, "[l]imited to a particular person, group, entity, or thing." *Exclusive*, Black's Law Dictionary (12th ed. 2024); *see also exclusive*, Merriam-Webster's Collegiate Dictionary

---

[14] In such an instance, the employer's failure to secure the required compensation carries with it an additional penalty: In an action brought pursuant to subsection (c), an employer is barred from utilizing as a defense the employee's assumption of the risk, the employee's contributory negligence, or another employee's negligence. L&E § 9-509(c)(2).

(11th ed. 2020) (noting definitions of "excluding or having power to exclude[;]" "excluding other from participation[;]" "single, sole[;]" "whole, undivided"). In L&E § 9-509(a), "exclusive" modifies "liability," which is further modified by "under this title." Thus, the plain language makes clear that an employer's liability is limited to that found only within the Act itself and extends no further.[15]

That L&E § 9-509(b) mentions only "a covered employee or the dependents of a covered employee" does not limit the broad immunity granted under subsection (a). Rather, subsection (b) does its own work. Start with the plain language. That subsection states that the "compensation provided under this title to a covered employee . . . is in place of *any right of action against any person*." L&E § 9-509(b) (emphasis added). Notably, the statute *does not state* that compensation provided to a covered employee is in place of any right

---

[15] Contrary to Justice Killough's assertion, we do not "elevate[ the word] 'exclusive' into a freestanding shield[.]" Dissenting Op. of Killough, J., at 15. Rather, we give effect to the entirety of L&E § 9-509(a). That subsection's prefatory clause—in *conjunction* with the word "exclusive"—signals the General Assembly's intent that a compliant employer's liability extends no further than the bounds of the Act itself. Justice Killough argues that "[n]owhere in L&E § 9-509 has the General Assembly expressly extended that exclusivity to bar non-dependent children from suing for their parent's wrongful death." *Id.* at 13. But it is hard to imagine how the General Assembly's grant of immunity could be any clearer or broader. The General Assembly specifically stated that exceptions to an employer's liability must be stated within the Act itself and that the employer's liability "under this title[,]" i.e., when the event at issue concerns a covered employee's injury or death, is exclusive. L&E § 9-509(a). The word "exclusive" is not further modified or constrained to a particular claimant, and it is not the job of this Court to supply such a restriction. Indeed, if the General Assembly truly wanted a compliant employer's immunity to extend *only* to specific individuals, such as those entitled to compensation under the Act, i.e., to employees and their dependents, then it easily could have done so by specifying that the employer's liability in L&E §9-509(a) is "exclusive *as to a covered employee and a covered employee's dependents*." That L&E § 9-509(a)'s grant of immunity is not so limited is persuasive evidence that the General Assembly intended for the employer's immunity to apply broadly.

14

of action *by a covered employee or a covered employee's dependent*. The compensation stands in place of *any* cause of action against *any* person. The phrase "cause of action" is not so limited to one filed by only a covered employee.[16]

As noted, L&E § 9-509(b) also contains the same prefatory language as subsection (a), noting that the rule contained therein applies "[e]xcept as otherwise provided in this title[.]" L&E § 9-509(b). And of course, the Act then provides an exception for when a covered employee may obtain compensation outside the Act: when an injury is sustained based on the conduct of a third party, i.e., someone "other than" the covered employee's employer. *Id.* § 9-901. Where a covered employee has sustained injuries attributable to a third party, L&E § 9-901 gives the covered employee the option between obtaining compensation under the Act or bringing "an action for damages against the person liable for the injury or death[.]" *Id.* § 9-901(2). And where a third party is responsible for a covered employee's injury or death, the Act provides for subrogation principles that ensure that an employer, its insurer, the Subsequent Injury Fund, and/or the Uninsured Employers' Fund is not left un-indemnified. *See generally id.* § 9-902.

The plain language of L&E § 9-509 is reason alone to reject Ms. Ledford's interpretation of the Act, but we typically do not interpret one section of a much larger

---

[16] In her dissent, Justice Watts reaches the opposite conclusion, stating that the "compensation provided under the Act to a covered employee and a covered employee's dependents takes the place of any right of action *a covered employee or the covered employee's dependents have against any person for accidental personal injury*." Dissenting Op. of Watts, J., at 7 (emphasis added). As we explain above, the plain language of L&E § 9-509(b) does not evince that the "cause of action" referenced is so limited to one filed only by a covered employee or dependent.

15

statutory scheme in a vacuum. *See Zukowski*, 490 Md. at 264–65. To that end, we turn to the Act's provisions that establish when and to what extent an employer *is liable* to non-dependents—the class of individuals to which Ms. Ledford belongs. L&E § 9-684 states, in relevant part, that when "there are no dependents, the liability of an employer or its insurer shall be limited to[]" medical costs and funeral benefits. L&E § 9-684(1)–(2). L&E § 9-689(c) then further details that liability: "If there are no dependents, the employer or its insurer shall pay the expenses of the last sickness and funeral expenses of the covered employee." The rest of L&E § 9-689 implements limitations on the amount for which the employer is liable. *Id.* § 9-689(a)–(b). The plain language of L&E § 9-684 specifically states that, when a covered employee dies without dependents, the employer's (or its insurer's) "liability" is "limited to" medical costs and funeral benefits. Like with the "cause of action" in L&E § 9-509(b), the "liability under L&E § 9-684 is not then further limited or modified by the phrase "with respect to a covered employee or a covered employee's dependents." Thus, the phrase "limited to[]" indicates that—in all instances—an employer's liability when there are no dependents will not exceed what is provided for in L&E § 9-684.

From L&E §§ 9-684 and 9-689, the General Assembly specifically contemplated situations where a covered employee dies without dependents. In that instance, the General Assembly ensured that no one else, i.e. non-dependents, would be burdened with any sort of expense (medical or burial) for a covered employee's work-related fatality. That the Act contemplates people in Ms. Ledford's shoes is persuasive evidence that she—and others

similarly situated—were not forgotten when the Grand Bargain was struck. Indeed, they were intentionally considered and incorporated into the Act.

Ms. Ledford argues that funds paid pursuant to L&E §§ 9-684 and 9-689 do not qualify as "compensation" because they are merely reimbursements that may or may not pass through the hands of the non-dependent individual. We find her argument unconvincing. To begin, Ms. Ledford argues that it is a "well settled notion that payment of an expense does not 'compensate,' because reimbursing an expense is different than safeguarding dependents from the financial peril occasioned by the death of a bread winner by paying weekly *death benefits*." While Ms. Ledford does not explicitly make this connection, we assume that the term "compensation," which she finds so critical to her position, is drawn from L&E § 9-509, which specifies that "the *compensation* provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person." L&E § 9-509(a)–(b) (emphasis added).

Ms. Ledford's focus on the word "compensation" is misguided for several reasons. First, Ms. Ledford cites to *University of Maryland Medical Systems Corp. v. Erie Insurance Exchange* where the Appellate Court stated:

> The word "compensation" itself has more than one meaning as used throughout the [Act]. In various places within the [Act], 'compensation' has the limited meaning of the payments ordered in accordance with the schedules . . . for permanent total disability, temporary total disability, or permanent or temporary partial disability, as distinguished from various other benefits awardable by the Commission. In other places throughout the [Act], however, the [General Assembly] used the word "compensation" in its broad sense, referring to all benefits provided in the article, which would include medical benefits as well as rehabilitation.

17

89 Md. App. 204, 211–12 (1991) (footnote omitted) (citing *Uninsured Emps'. Fund v. Booker*, 13 Md. App. 591 (1971)). Ultimately, however, because "[p]ayment of medical bills incurred for treatment rendered in the past[] . . . is not necessary for the injured worker's survival or well-being during the appeal process[,]" the Appellate Court held that such medical treatment did not qualify as compensation. *Id.* at 216. Ms. Ledford zeroes in on the Appellate Court's distinction between payment of medical bills and payment for loss of financial support and draws an analogy between the former in that case, and the medical and funeral costs contemplated in L&E §§ 9-684 and 9-689. And while the court in *Erie* ultimately held that pre-hearing medical expenses did not qualify as "compensation," that was a narrow holding which, as the quoted language above makes clear, does not define "compensation" throughout the Act, and, in fact, says nothing about the meaning within L&E § 9-509.

Second, by focusing on the term "compensation," Ms. Ledford misses the forest for the trees. The emphasis on this word, especially when it has multiple meanings within the Act, ignores the fact that the General Assembly clearly contemplated Ms. Ledford's exact scenario, ultimately deciding to provide either direct payment for certain services or reimbursement for those services. *See* L&E §§ 9-684, 9-689. And it is irrelevant whether an employer elects to reimburse a non-dependent child for expenses incurred or pay medical providers and funeral homes directly. What *is* relevant is that the General Assembly did not want to saddle grieving, non-dependent individuals with funeral and medical costs, and it accomplished this by providing a legislative avenue for relieving said individuals of that burden. Thus, we agree with the Appellate Court's conclusion in this

case that "[b]y including those provisions, the [General Assembly] signaled that the Act was exclusive to dependents and non-dependents alike." *Ledford*, 259 Md. App. at 551.[17]

For the aforementioned reasons, we hold that the plain language of L&E § 9-509 is unambiguous in that a compliant employer's liability for a covered employee's work-related injuries or death extends no further than what is provided in the Act itself. Because the Act does not authorize adult non-dependent children of a covered employee to file a wrongful death action for a work-related death of a parent, employers are not subject to such liability.

Our caselaw also supports our plain language analysis that the exclusivity provision shields compliant employers from liability external to the Act. For instance, in *Victory Sparkler & Specialty Co. v. Francks*, a minor received a judgment for damages after she

---

[17] We do not "attempt[] to reframe burial expenses as a form of 'compensation' or 'restitution.'" Dissenting Op. of Killough, J., at 22 (footnote omitted). Rather, it is Ms. Ledford who uses those terms in arguing that L&E §§ 9-684 and 9-689 do not provide her the compensation to which she believes she is otherwise is entitled. Nor do we "treat the payment of a funeral bill as a legal substitute for wrongful death damages[.]" *Id.* at 23. We discuss L&E §§ 9-684 and 9-689 simply to highlight that the 1914 General Assembly that enacted the Act specifically considered what would happen if a covered employee died in the course of employment without dependents. The 1914 General Assembly's solution was to ensure that non-dependents (or any other person or entity) did not incur a financial burden with the passing of a covered employee. The immunity that the General Assembly afforded compliant employers has remained as broad as the day it was enacted. That the General Assembly has not seen fit—even in the wake of extending the WDA to people in Ms. Ledford's position—to limit that immunity within the Act itself is evidence that they did not intend the WDA's 1997 expansion to serve as a limitation on the over-100-year-old immunity afforded to compliant employers. Our decision, therefore, does not "elevat[e] a minimal reimbursement mechanism into a full bar against otherwise valid claims, *id.*; rather, it adheres to our traditional canons of statutory interpretation by faithfully applying the plain language of a statute and harmonizing the many sections within a much larger statutory scheme, *see, e.g.*, *Marks-Sloan*, 428 Md. at 18–19.

developed phosphorous poisoning while working for a fireworks company. 147 Md. 368, 371 (1925). This Court held that the Act was the minor's exclusive remedy and that she could not recover in common law, as her injury arose out of the scope of her employment. *Id.* at 376. Specifically, this Court said:

> [W]henever this Court has spoken on any phase of this subject, it has uniformly said that, aside from the exceptions created by the act itself, the operation of the law is exclusive of *all other remedy and liability*, with respect to *both* the employer and employee, . . ., in regard to *all injury arising out of and in the course of the employment*.

*Id.* at 375 (emphases added) (citation omitted). In other words, when a covered employee is injured within the scope of their employment, the exclusivity clause is triggered, such that an employer's liability is automatically limited to the remedies and exclusions found within the Act itself. We have reiterated this principle in many subsequent cases. *See, e.g.*, *Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 49 (1984) (describing the "time-honored principle of exclusivity from liability by any other remedy for disabilities caused by the environment in the workplace"); *Brady v. Ralph M. Parsons Co.*, 327 Md. 275, 279 (1992) (noting that, aside from very narrow exceptions, "workers' compensation is the exclusive remedy of the injured employee and his dependents against an employer for an injury or death"); *Marks-Sloan*, 428 Md. at 14 (noting that "an injured employee's sole remedy against his or her employer for an accidental personal injury sustained during the course of employment is through the . . . Act[]").

And while the question before us is a novel one, this is not the first time that this Court has examined the Act's exclusivity provision and its relationship to the WDA.

In *Knoche v. Cox*, a dental assistant was negligently shot and killed at work when the dentist was showing a pistol to an interested patient. 282 Md. at 449. The assistant's husband filed a wrongful death action against the dentist, but we held that the incident arose out of the decedent's employment, and, therefore, the dentist's liability was limited by the exclusivity provision of the Act. *Id.* at 457–58. Specifically, we said:

> This Court, long past and to the present day, has uniformly said that, aside from the exceptions created by the Act itself, the operation of the law is exclusive of all other remedy and liability, *as to both the employer and employee* who come within the purview of the Act, *with respect to all injury arising out of and in the course of employment.*

*Id.* at 452–53 (emphases added) (citing *Victory Sparkler & Specialty Co.*, 147 Md. at 375).[18]

The Appellate Court then reiterated this principle in *Austin v. Thrifty Diversified, Inc.*, a case in which the parents of a deceased covered employee brought a wrongful death action after their son died on his employer's premises when using company equipment

---

[18] In his dissent, Justice Killough faults us for relying on *Victory Sparkler & Specialty Co.* and *Knoche* because, while those cases "contain broad statements about the [Act's] exclusivity to other rights and remedies," those statements were "pure dicta because those cases did not concern 'rights or remedies' outside the [Act] and were not necessary for resolution of those cases." Dissenting Op. of Killough, J., at 21. Justice Killough further notes that "those statements must be viewed in the context in which they were made: where the injury or death is compensable under the [Act] and the plaintiff is a dependent or covered employee within the [Act's] remedial scope." *Id.* Justice Killough is correct that those cases contain broad statements about the law, but that is because the law—L&E § 9-509—speaks broadly, just as the General Assembly intended. Those cases described the broad immunity granted to compliant employers. *See Victor Sparkler & Specialty Co.*, 147 Md. at 375; *Knoche*, 282 Md. at 452–53. That immunity is not contingent on simply who files suit. And we further agree with Justice Killough that neither *Victory Sparkler & Specialty Co.* nor *Knoche* resolved the *precise* issue implicated by this case, but that is why those cases, and the statements from them on which we rely, *supplement* our plain language analysis, rather than replace it.

21

after hours. 76 Md. App. 150, 152–54 (1988).[19] The court held that the decedent's death arose out of and in the course of employment and that the Act was, therefore, the exclusive remedy. *Id.* at 159, 164. In an observation that is especially salient to the case at hand, the Appellate Court noted: "[U]nless the personal injury did not arise out of or in the course of employment, [the parents of the deceased covered employee] may not maintain [a] wrongful death action." *Id.* at 156. That is, once a covered employee is injured or killed in

---

[19] Justice Killough also takes issue with our discussion of *Austin* because the Appellate Court did not "discuss the statutory basis for the parents' claim other than to state that the complaint in that case alleged negligence, a failure to supervise and warn, and a violation of the [then-current] Maryland Occupational Safety Act[.]" Dissenting Op. of Killough, J., at 21–22. We agree that, in *Austin*, the Appellate Court did not cite the WDA by statute, but there is little room for doubt that the parents' negligence claim in that case was anything but a wrongful death action. *See Austin*, 76 Md. App. at 152 ("Appellants brought suit against appellee for the *wrongful death* of their son." (emphasis added)), 156 ("[U]nless the personal injury did not arise out of or in the course of employment, appellants may not maintain this *wrongful death action*." (emphasis added)). Even if the parents in *Austin* had filed a wrongful death claim, Justice Killough believes that, at the time of *Austin*

> the parents were only eligible to recover solatium damages if the decedent was unmarried and under the age of 22 or the parents contributed more than 50% of the decedent's support. That is no longer the law, as CJP § 3-904(e), as amended in 1997, closes that remedial gap. Thus, if *Austin* was decided today, the parents could recover solatium damages under the WDA notwithstanding the requirements of CJP § 3-904(d).

Dissenting Op. of Killough, J., at 22 (citation omitted). But it is unclear how the state of damages attainable under the WDA at the time of *Austin* has any relevance to this appeal. *Austin* stands for the proposition that if—and only if—it was determined that the decedent's accidental death occurred *outside the scope of his employment*, i.e., so that the Act was *inapplicable*, could the parents in that case recover. *Austin*, 76 Md. App. at 156. Because the Appellate Court held that the decedent's death "arose out of and in the course of employment[,]" the parents' "exclusive remedy [wa]s under the . . . Act." *Id.* at 164.

22

the course of employment, the Act automatically becomes the sole means for recovery, regardless of whether a wrongful death action might otherwise be appropriate.[20]

We agree with Ms. Ledford that one of the General Assembly's goals in fashioning the exclusivity provision was to prevent double recovery. *See, e.g.*, *Marks-Sloan*, 428 Md. at 14 ("The purpose of the exclusivity rule is to ensure swift compensation to the injured employee and to prevent a double recovery, through a workers' compensation award and a tort judgment, from an employer by an injured employee."). Double recovery is, however, one side of the coin, as there can be no recovery without a reciprocal liability. If the General Assembly wanted to eliminate the possibility that an injured worker could be compensated twice for the same injury, then surely the General Assembly was concerned with the other side of the coin: double liability. In that regard, the General Assembly also was concerned with the potential for an employer paying twice for a single incident. If we were to hold that a non-dependent child of a deceased covered employee is not subject to the exclusivity provision, it is easy to imagine a scenario in which a covered employee, with both dependent and non-dependent children, dies while acting within the scope of their employment. The dependent children, covered by the Act, are limited to the liability contained therein, and receive the compensation afforded them by the Act. The non-dependent children, not covered by the Act, could still bring a wrongful death claim,

---

[20] We emphasize that even though the Act automatically becomes the sole means for recovery in such an instance, this does not mean that an employer is automatically liable. An employer may still, for instance, dispute whether an incident occurred within the scope of employment before they are required to provide compensation in accordance with the Act's terms.

forcing the employer to pay twice for the same event—the latter of which was a situation that the Grand Bargain sought to eliminate.[21] While Ms. Ledford herself does not pose a risk of double recovery on the narrow facts of this case because Mr. Ledford did not also leave behind any dependents, we must look at the broader implications of our holding. In doing so, we cannot align what she asks with the intent of the General Assembly.[22]

---

[21] We recognize and agree with Justice Killough that the types of compensation afforded by the Act are economic in nature while those afforded under the WDA are non-economic in nature. CJP § 3-904(e) (allowing for recovery on things such as "mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable"). But we do not share Justice Killough's view that the Act's exclusivity provision "protects employers from double recovery of the *same* remedy, not from parallel obligations arising under separate statutory schemes compensating distinct injuries to *different* classes of survivors." Dissenting Op. of Killough, J., at 30–31. As we have noted, part of what employers gained under the Grand Bargain was the reassurance that—if compliant—they would be free from the sort of non-economic damages contemplated by the WDA and other routine negligence cases. *See, e.g.*, *Polomski*, 344 Md. at 77. Thus, in a world where a covered employee dies, leaving behind both dependents and non-dependents, an employer—under traditional tort principles—perhaps would not be paying twice for the same type of damages. Under the carefully crafted system of workers' compensation, however, the employer *would be paying twice* given that the General Assembly has assured compliant employers that its liability extends no further than the Act, which, as we have discussed, provides only for quick, assured, economic damages. *See, e.g.*, *Marks-Sloan*, 428 Md. at 36–37.

Additionally, like Justice Killough, we agree that one of the Act's many compromises was "the need, of both employers *and* employees, to avoid expensive and unpredictable litigation over accidents in the workplace." *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 438 (1996) (citing Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* §§ 1.0–1.2 (2d ed. 1993 & Supp.1996)); *see also* Dissenting Op. of Killough, J., at 9. The benefit of an employer's bargain would be eliminated if it complied with the Act but nevertheless found itself subject to such expensive and unpredictable litigation.

[22] Ms. Ledford's suggested interpretation also produces results at odds with the spirit of the Act. As noted, the WDA allows a non-dependent child to obtain non-economic damages. *See supra* n.21; *see also* CJP § 3-904(e). These types of damages are not available to dependents under the Act; instead, death benefits under the Act are determined by things

Lastly, we construe statutes in harmony whenever possible. We have previously stated on multiple occasions that the Act and the WDA, construed together, present no conflict. *See, e.g.*, *Knoche*, 282 Md. at 453 n.2 ("There is nothing in conflict between the . . . Act and the [WDA] . . . . The two acts are in *pari materia* and must be construed together."); *Powell v. Erb*, 349 Md. 791, 801–02 (1998) ("[I]t is well settled that there is nothing in conflict between the . . . Act and the [WDA]. They both unquestionably deal with recovery for injuries resulting in death. The two acts are in *pari materia* and must be construed together.") (citations omitted)).[23] Unless an employer has not complied with the

---

such as the deceased employee's wages at the time of death, a dependent's level of dependency (either partial or permanent), and the number of dependents. L&E §§ 9-681–9-683, 9-683.3, 9-683.5. Yet under Ms. Ledford's interpretation of the Act, a non-dependent child could secure more compensation via a favorable judgment for a wrongful death claim than her dependent counterparts who would not be entitled to receive the type of damages that the WDA contemplates. While the General Assembly considered both dependents and non-dependents when it fashioned the Grand Bargain, the General Assembly paid particular attention (understandably so) to dependents. We seriously doubt that the General Assembly intended those not financially dependent on a deceased covered employee to potentially recover more than those who *were* financially dependent on the deceased covered employee and are otherwise covered by the Act. *See Zukowski*, 490 Md. at 268 (rejecting an interpretation of the Act that would allow attorneys for injured workers to collect a fee that would entirely or substantially consume an injured worker's award of compensation). The consideration of absurd and illogical results is one of our longstanding principles of statutory construction, *see id.* at 265, not a "policy objection[,]" Dissenting Op. of Killough, J., at 27.

[23] Justice Killough argues in his dissent that our interpretation creates conflict with one of the WDA's provisions, CJP § 3-904(g). Dissenting Op. of Killough, J., at 16–19. That provision provides a general three-year statute of limitations for a wrongful death plaintiff to bring their claim. CJP § 3-904(g)(1). But there is an exception if a decedent dies from an "occupational disease," which "means a disease caused by exposure to any toxic substance in the person's workplace and contracted by a person in the course of the person's employment." *Id.* § 3-904(g)(2)(i). In that scenario, a wrongful death plaintiff must file their claim within 10 years of the decedent's death or within three years "of the date when the cause of death was discovered, whichever is the shorter." *Id.* § 3-

requirements of the Act or has intentionally caused a covered employee's injury or death

(neither of which apply here), liability under the Act is the employer's exclusive liability

for injury and death arising out of the course of employment. Because the Act does not

make Jenway liable to Ms. Ledford, except to the extent of any medical costs and funeral

---

904(g)(2)(ii). According to Justice Killough, CJP § 3-904(g) clearly "signal[s] that a wrongful death action may arise even when the decedent was a covered employee, and the exposure occurred in the workplace – potentially implicating either the employer or third-parties." Dissenting Op. of Killough, J., at 17. Ultimately, Justice Killough believes that, in enacting CJP § 3-904(g), "the General Assembly *deliberately* preserved wrongful death causes of action in the occupational disease context, *particularly* for adult non-dependent children . . . who otherwise receive no [w]orkers' [c]ompensation benefits." *Id.* at 18 (emphases added).

       We disagree with Justice Killough's conclusion. What is currently CJP § 3-904(g)(2) was enacted for "the purpose of providing an exception for a death caused by an occupational disease to the general statute of limitations for filing an action for wrongful death[.]" 1986 Md. Laws, ch. 374. The preamble to Chapter 374 further states:

> WHEREAS, As a matter of fundamental fairness, a cause of action should not be deemed to have accrued until the date that knowledge of the wrong upon which the action is based is discovered or should be discovered; and

> WHEREAS, Enactment of this section will provide full protection to the *dependents* of persons who have died as the result of the wrongful act of another[.]

*Id.* (emphasis added). Chapter 374, thus, makes clear that the General Assembly was concerned with dependents—not adult non-dependent children—and said nothing about a child's (dependent or otherwise) parent's employer or the preservation of wrongful death claims. Instead, we agree with Justice Killough's own astute observation that subsection (g)(2) does work by applying to third-party suppliers who may cause a covered employee to experience an occupational disease at the covered employee's own place of business. Dissenting Op. of Killough, J., at 17. Because such a scenario would be based on the negligent acts of a third party, the Act authorizes a covered employee's dependents to pursue a wrongful death action against that third party, triggering the Act's subrogation principles. *See* L&E §§ 9-509(b), 9-901.

expenses she may have incurred, she is barred from bringing a wrongful death action against Jenway.

In his dissent, Justice Killough argues that our decision today runs contrary to two of our past decisions: *Mummert v. Alizadeh*, 435 Md. 207 (2013), and *Taylor v. State, Use of Mears*, 233 Md. 406 (1964). Dissenting Op. of Killough, J., at 24–26. Neither case conflicts with our holding.[24]

In *Mummert*, we held that a decedent's failure to bring a medical negligence claim during her lifetime within the applicable statute of limitations did not bar her surviving family from filing a wrongful death suit after her passing. 435 Md. at 210. In reaching that conclusion, we noted that the General Assembly's purpose in passing the WDA "was to compensate the families of the decedents, as opposed to the estates of the decedents," and that the General Assembly "intended the [WDA] to be a new cause of action, separate and independent largely from the decedent's own negligence or other action or a survival action, meant to preserve an action [of] the decedent[.]" *Id.* at 219. In other words, the WDA was intended to "allow 'a spouse, parent, or child, or a secondary beneficiary who was wholly dependent on the decedent, to recover damages for his or her own loss accruing from the decedent's death.'" *Id.* at 220 (quoting *Eagan v. Calhoun*, 347 Md. 72, 82 (1997)).

---

[24] Justice Killough agrees that *Mummert* and *Taylor* "involved different factual scenarios than this case" and that "distinctions can be drawn." Dissenting Op. of Killough, J., at 25. To Justice Killough, however, our careful distinguishing of *Mummert* and *Taylor* "[is] of no moment[]" because "[w]hat matters is not the factual symmetry in our previous decisions, but rather the legal propositions that those cases establish[.]" *Id.* We could not disagree more. As our discussion of *Mummert* and *Taylor* will reveal, the factual distinctions make all the difference, and those decisions do not stand for the legal propositions for which Justice Killough cites them.

We also are not inclined to ignore the portion of our opinion in *Mummert* where we specifically recognized that certain "defenses" to the decedent's *own* cause of action *could be* a defense to an otherwise valid wrongful death claim. Our opinion in *Mummert* recognized at least five different cases where we previously held that a particular defense could preclude an otherwise valid wrongful death claim: *Smith v. Gross,* 319 Md. 138 (1990) (parental immunity); *Frazee v. Baltimore Gas and Electric Co.,* 255 Md. 627 (1969) (contributory negligence); *State ex rel. Bond v. Consolidated Gas, Electric Light and Power Co.,* 146 Md. 390 (1924) (no privity of contract between decedent and manufacturer); *State ex rel. Melitch v. United Railways and Electric Co. of Baltimore*, 121 Md. 457 (1913) (release of liability); *Baltimore and Potomac Railroad Co. v. State ex rel. Abbott,* 75 Md. 152 (1892) (assumption of risk). *Mummert*, 435 Md. at 221. As relevant here, after directly citing some of the above cases, including *Smith*, which concerned parental immunity, we stated in *Mummert*:

> Those defenses are distinguishable from [the] statute of limitations defense [at issue in *Mummert*], however, because, where those defenses apply, the decedent did not have a viable claim from the outset. Thus, the [WDA's] requirement of an act "which would have entitled the party injured to maintain an action and recover damages if death had not ensued" barred the wrongful death claims in those instances.

*Id.*

Thus, *Mummert* stands merely for the proposition that a decedent's failure to comply with an applicable *statute of limitations* for what would have been her own cause of action is not a limitation on a future wrongful death plaintiff. Our opinion in *Mummert* recognized several limitations on a decedent's ability to bring a claim that also apply to a wrongful

28

death claimant. Even Mr. Ledford would have been barred from suing Jenway in an action for negligence based on Jenway's immunity under the Act; thus, *Mummert* actually supports the conclusion that Ms. Ledford herself is barred from suing Jenway. *See Mummert*, 435 Md. at 221; *see also Smith*, 319 Md. at 149 (holding that the parent-child immunity was applicable in that case and noting that "[t]he only prerequisite for the prosecution of the [wrongful death] action[] authorized is the entitlement of the injured decedent to maintain the respective action and recover damages if death had not ensued[]" and that, had the General Assembly "intended that the judicially created parent-child immunity rule be excepted from the legislatively created survival and wrongful death actions, it has had ample opportunity to say so[]").[25]

Our decision also does not conflict with *Taylor*. In *Taylor*, the decedent was killed in the course of his employment due to the negligence of third parties who were independent of the decedent's employer. 233 Md. at 407. The decedent was survived by

---

[25] To be sure, in *Mummert*, we stated: "We hold that the [General Assembly] did not intend to define 'wrongful act' so as to render a wrongful death claim contingent on the decedent's ability to *file timely* a tort claim prior to death." 435 Md. at 210 (emphasis added). But that statement simply reflects *Mummert*'s holding, as we have described it: that a decedent's inability to file a timely negligence claim does not bar a future wrongful death plaintiff from bringing their own independent cause of action under the wrongful death statute. That statement does not, as Justice Killough believes, support the proposition that "a beneficiary may maintain a wrongful death suit *even if the decedent could not* or did not sue in [their] lifetime." Dissenting Op. of Killough, J., at 26 (emphasis added). While a decedent's failure to file a suit or untimely file a suit—on its own—certainly could not bar a future wrongful death plaintiff, *Mummert* specifically recognized, as we noted above, the various instances where a decedent's inability to sue (due to certain immunities or affirmative defenses) *would* preclude a future wrongful death action. That Justice Killough does not meaningfully confront those critical portions of our opinion in *Mummert* is telling.

29

children born to a prior marriage, as well as children he fathered with a woman who was not his wife, but with whom he lived at the time of this death. *Id.* We specifically noted that the decedent's children born out of wedlock were in fact dependents covered under the Act, even though he also had surviving children born during a prior marriage. *Id.* at 410.

We then went on to examine whether the children born out of wedlock rightly recovered against the third parties in addition to their compensation received under the Act, turning to the subrogation section (L&E § 9-901),[26] which specifically addresses that situation. *Id.* at 409–13. We held that L&E § 9-901 "enlarge[s] the persons who may take the benefit of the liability already existing and created by [the Act]." *Id.* at 412 (quoting *Storrs v. Mech*, 166 Md. 124, 132 (1934)). Thus, we simply recognized in *Taylor* that L&E § 9-901 authorizes a dependent of a decedent to bring suit against an independent third party, even when that dependent is also able to recover benefits under the Act. *Id.* at 409–13; *see also* L&E §§ 9-901, 9-902. In other words, the filing of the wrongful death action in that case was an exception "otherwise provided in" the Act, as referenced in L&E § 9-509(b), which permits suit outside of the means for recovery delineated by the Act.

Notably, we highlighted that if the children born out of wedlock in question had not been dependents entitled to compensation under the Act, they likewise would not have been able to sue pursuant to the exception found in the Act's subrogation section. *Taylor*, 233 Md. at 413. Unlike the dependent children in *Taylor*, Ms. Ledford is not subject to the

---

[26] At the time of *Taylor*, the subrogation principles were contained in Article 101 § 58 (1964 Repl. Vol.).

subrogation exception because she is not a dependent as defined in the Act, and, therefore, she may not bring a wrongful death claim against Jenway.

Justice Killough recognizes that *Taylor* involved the subrogation principles outlined in the Act but believes that distinction to be "beside the point." Dissenting Op. of Killough, J., at 24. But, as we previously noted, *see supra* n.23, the facts make all the difference. The facts of *Taylor* were cabined to the Act itself: the decedent was killed by a third party, 233 Md. at 407, and the law permitted the dependents in *Taylor*—even after an award under the Act—to file a wrongful death claim, L&E § 9-902(c); the law simply would have required the dependents to reimburse any funds previously paid under the Act, *id.* § 9-902(e), (g). Thus, contrary to Justice Killough's assertion, *Taylor* did not "reject[] categorical displacement of the WDA by the [Act,] Dissenting Op. of Killough, J., at 25. Rather, we based our decision in *Taylor* on the carefully delineated subrogation exceptions contained within the Act. *See* L&E §§ 9-509(b), 9-901, 9-902. If *Taylor* "rejected" anything "categorical[ly,]" Dissenting Op. of Killough, J., at 25, it was the idea that a wrongful death claim could be maintained by those *not* considered dependents under the Act and where no exception to an employer's liability existed. *See Taylor*, 233 Md. at 413 ("Thus, if the[] . . . children [born out of wedlock] . . . had not been entitled to sue as dependents under the . . . Act, *but had proceeded solely under the wrongful death statute, they would have had no standing to sue* . . . ." (emphasis added)).

Thus, as a case that dealt squarely with negligent acts of a third party—wholly separate from the decedent's employer—and the issue of subrogation, *Taylor* is in no way disturbed by our decision here, nor does it compel a different result.

31

Thus, we hold that the plain language of the Act's exclusivity provision forecloses a wrongful death action from a non-dependent child of a deceased covered employee. This interpretation is in line with previous cases in which we have made clear that the exclusivity provision protects compliant employers from outside liability for a covered employee's injury or death, regardless of the identity of the party bringing suit.

**B.** ***The Act's Exclusivity Provision Does Not Violate Article 19 of the Maryland Declaration of Rights***

Ms. Ledford argues that construing the Act's exclusivity provision as barring her wrongful death claim would violate Article 19 of the Maryland Declaration of Rights. We disagree. Article 19 states:

> That every [person], for any injury done to [them] in [their] person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

This Court has interpreted Article 19 as protecting "two interrelated rights: (1) a right to a remedy for an injury to one's person or property; [and] (2) a right of access to the courts." *Piselli v. 75th St. Med.*, 371 Md. 188, 205 (2002). Accordingly, Article 19 "generally prohibits unreasonable restrictions upon [1] traditional remedies or [2] access to the courts[.]" *Id.* at 206. This is not, however, an unqualified prohibition, and the General Assembly is permitted, "pursuant to its authority to change the common law or statutory provisions, to enact reasonable restrictions upon traditional remedies or access to the courts." *Id.* (footnote omitted) (citing *Johnson v. Md. State Police*, 331 Md. 285, 297 (1993)). Thus, whether dealing with a restriction on either a remedy or access to the courts, this Court assesses the constitutionality of the restriction by balancing how long the

affected remedy or limitation on access to the courts has been established ("tradition") and the reasonableness of the restriction.

As to restrictions on remedies, such restrictions have most frequently been considered in the form of caps on damages. This Court has held that such caps are reasonable, and so permissible, when they further sound legislative purposes and do not leave the aggrieved with a woefully insufficient remedy. For example, in *Murphy v. Edmonds*, an automobile driver and her spouse brought suit against a tractor-trailer driver and his employer for injuries sustained in a collision. 325 Md. 342, 347 (1992). The couple's potential recovery was subject to a statutory cap of $350,000, which this Court held did not violate Article 19. *Id.* at 366–67. We said that the provision at issue in *Murphy* did not restrict access to the courts, but even if it did, that the restriction would be "entirely reasonable[,]" *id.* at 367, as it furthered the General Assembly's sound goal of ensuring "the availability of sufficient liability insurance, at a reasonable cost, in order to cover claims for personal injuries to members of the public[,]" *id.* at 369.

In *Espina v. Jackson*, we likewise held as reasonable the Local Government Tort Claims Act's ("LGTCA's") $400,000 cap on damages, even where an individual was killed by a police officer and the plaintiffs' roughly $11.5 million verdict for non-punitive damages was reduced by 98 percent. 442 Md. 311, 317–19 (2015). In reaching this holding, we noted that the petitioners were neither without a remedy, nor faced with a "drastically inadequate" remedy. *Id.* at 344. The petitioners were able to bring their claim, and receive damages, albeit subject to a statutory cap. *Id.* at 343–44. Importantly, we emphasized that the LGTCA, in fact, "ensures that injured persons will be compensated for their injuries—

33

up to the damages cap—by requiring local governments to pay judgments entered against their employees and prohibiting local governments from asserting governmental immunity as a defense to that responsibility." *Id.* at 337–38 (citation omitted).

In contrast, in *Jackson v. Dackman Co.*, a case that involved restrictions both on a remedy and access to the courts, a tenant and her minor daughter sued their landlord for the daughter's lead paint poisoning, which resulted in permanent brain damage. 422 Md. 357, 370 (2011). The circuit court found that the landlord was immune from liability in accordance with the immunity provisions found in the Reduction of Lead Risk in Housing Act ("RLRHA"), but this Court held that the immunity provisions violated Article 19. *Id.* at 361, 374, 376. The provisions made it so that individuals covered under the RLRHA had either no remedy, or a maximum remedy of $17,000, which we described as "totally inadequate and unreasonable." *Id.* at 381. We stated:

> For a child who is found to be permanently brain damaged from ingesting lead paint, proximately caused by the landlord's negligence, the maximum amount of compensation . . . is miniscule. It is almost no compensation. Thus, the remedy which the [RLRHA] substitutes for a traditional personal injury action results in either no compensation . . . or drastically inadequate compensation[.]

*Id.* at 382. This Court noted that the petitioner's preferred remedy, an action in negligence, had "long been recognized under 'well-settled Maryland common law[,]'" *id.* at 380 (quoting *Polakoff v. Turner*, 385 Md. 467, 472 (2005)), while the immunity asserted by respondents was not "in any respect, a traditional or well-established immunity" because it had existed for only 17 years at the time of our opinion, *id.* at 380–81. Finally, this Court found instructive the fact that the immunity provisions contained "no exception" for when

34

an injured child reached the age of majority, and instead provided broad immunity to "all potential bases of liability for alleged injury or loss [to the injured person]." *Id.* at 382.

*Piselli* also involved restrictions to both a remedy and access to the courts. 371 Md. at 216. When a child's hip fracture was misdiagnosed, parents brought a medical malpractice suit on his behalf in federal court. *Id.* at 196. The district court judge determined that the action was time-barred as a matter of law, and the parents appealed to the United States Court of Appeals for the Fourth Circuit. *Id.* at 193, 197. That court certified a question of law to this Court:

> [W]hether, when a claim is brought by parents on behalf of a child who was injured before reaching age eleven, the three-year statute of limitations of section 5-109(a)(2) [of the Courts and Judicial Proceedings Article] begins to accrue upon the discovery of the injury by the child or upon discovery of the injury by the parents.

*Id.* at 193 (alterations in original). We held that the statute of limitations for a medical malpractice action on behalf of a minor claimant would not start to run until the minor reaches 18 years, as to conclude otherwise would violate Article 19. *Id.* at 219. In reaching that holding, this Court noted that it is a long-held principle in Maryland law that "time periods for bringing suit are tolled during infancy." *Id.* at 214. Indeed, the principle is so well established that it reached back "more than 500 years[,]" rendering the statute in that case as "an unreasonable restriction upon a child's remedy and the child's access to the courts." *Id.* at 215.

Additionally, this Court also has recognized both notice requirements and substitution with administrative remedies as valid restrictions on one's access to the courts. For instance, in both *Johnson v. Maryland State Police*, 331 Md. 285, 297–98 (1993), and

35

*Rios v. Montgomery County*, 386 Md. 104, 111–12 (2005), this Court held as valid under Article 19 notice of claim provisions in the Maryland Tort Claims Act ("MTCA") and LGTCA, respectively, which required plaintiffs to file a notice within 180 days of their injury in order to bring suit. In both cases, this Court noted that such notice requirements were part of a statutory framework enacted by the General Assembly to permit plaintiffs to sue the government—an option not otherwise available due to sovereign immunity. *Johnson*, 331 Md. at 297–98; *Rios*, 386 Md. at 139. Thus, this Court held that such provisions were reasonable restrictions upon an individual's access to the courts. *Johnson*, 331 Md. at 298; *Rios*, 386 Md. at 139. And, in *Robinson v. Bunch*, we held that administrative remedies (followed by the availability of judicial review) for State employees can be a substitute for what would otherwise have been a valid federal cause of action. 367 Md. 432, 446–47 (2002).

The exclusivity provision contained in L&E § 9-509 provides compliant employers with immunity from suit for injury or death of their employees, limiting liability to that provided under the Act. This immunity restricts Ms. Ledford's access to the courts and precludes her from pursuing the remedy she seeks, which is a wrongful death action against her father's employer for his work-related death. We must, therefore, determine whether that is a traditional remedy that is protected by Article 19 and, if so, whether that restriction is a reasonable one.

The Act's exclusivity provision currently codified in L&E § 9-509 was enacted over a century ago, at a time when non-dependent children had no rights under the common law, the WDA, or any other law to sue a parent's employer for damages arising from a

36

workplace accident resulting in death. In 1997, when the WDA was revised to extend rights generally to non-dependent children, the exclusivity provision had been firmly established for more than eight decades, precluding all claims against the employers of the parents of those non-dependent children outside of the workers' compensation system. As a result, non-dependent children in Maryland have never enjoyed the right to sue their parent's employer for damages arising from a workplace accident resulting in death. The remedy Ms. Ledford seeks is, therefore, not a traditional remedy. Indeed, it is a remedy that has never existed at all in Maryland. Accordingly, it is not protected by Article 19. *See Piselli*, 371 Md. at 206 (stating that "we have held that Article 19 does not require the recognition of a new tort cause of action which has never previously been recognized in Maryland"); *see also id.* (observing that Article 19 "generally prohibits unreasonable restrictions upon *traditional* remedies or access to the courts" (emphasis added)); *Dackman Co.*, 422 Md. at 380 (explaining that a personal injury suit "based upon the defendants' alleged violation of a duty under a statute or ordinance designed to protect a specific class of persons which includes the plaintiff" is one that "has long been recognized *under well-settled Maryland common law*" and, therefore, is "the type of remedy protected by Article 19" (emphasis added) (internal quotation marks and citations omitted)); *Witte v. Azarian*, 369 Md. 518, 533–34 (2002) (cautioning that interpreting a statute to "create an unreasonable impediment to the pursuit, or defense, of a recognized *common law right of action . . .*

would raise a serious question of the constitutionality of the provision" (emphasis added)).[27]

Ms. Ledford argues that she is left remediless because there is a distinction between a "remedy" and the statutory allowance for funeral and medical expenses afforded to non-dependents in L&E §§ 9-684 and 9-689(c). However, the fact remains, as discussed above, that the General Assembly contemplated non-dependent relatives of covered employees when it enacted the Act and did not leave such individuals without any means for recovery.[28] *See* L&E §§ 9-684 and 9-689(c). If the General Assembly had intended the

_____

[27] To date, the only traditional remedies we have recognized as being protected by Article 19 have been common law remedies. *See Cooper v. Rodriguez*, 443 Md. 680, 723 (2015) (concerning the common law remedy for a public official's gross negligence); *Lee v. Cline*, 384 Md. 245, 265 (2004) (concerning the common law remedy for tortious conduct of government official); *Piselli*, 371 Md. at 214 (concerning common law remedy for negligence arising from medical malpractice); *Johnson*, 331 Md. at 297 (concerning common law remedy for negligence arising out of an automobile accident); *Murphy*, 325 Md. at 365–66 (same). As the issue has not been raised in this appeal, we express no opinion concerning whether the protections afforded by Article 19 would apply to longstanding, traditional statutory remedies as well. In her dissent, Justice Watts believes, relying on our decision in *Espina*, that to interpret L&E § 9-509 as we have violates Article 19. Dissenting Op. of Watts, J., at 17. In *Espina*, we stated the following: "We have indicated, with regard to causes of action to recover for violations of *certain fundamental rights*, that an abrogation of access to the courts which would leave the plaintiff *totally remediless* would be unreasonable." 442 Md. at 338 (first emphasis added) (quoting *Murphy*, 325 Md. at 366). In this case, Ms. Ledford is not asserting a claim for a violation of a fundamental right or a traditional common law remedy. Moreover, as we noted, we leave open for another day whether Article 19 applies to statutory remedies.

[28] Ms. Ledford alternatively argues, that even if funeral and medical expense repayment qualifies as a "remedy," it is "as unconstitutional as the damage cap" in *Dackman Co.* We find no viability in that comparison. In *Dackman Co.*, the General Assembly had imposed a statutory cap on damages that could be recovered for a traditional common law cause of action. 422 Md. at 381. Here, Ms. Ledford would like to pursue a statutory claim that the General Assembly never extended to her. Thus, Article 19 does not apply.

1997 revision to the WDA to authorize claims by non-dependent children against the employers of their deceased parents, it could have reciprocally revised the Act's exclusivity provision to so provide. It did not.

Moreover, it would be unreasonable to subject compliant employers to suit from non-dependent relatives of deceased covered employees when the employers have otherwise been assured that their liability is limited to the confines of the Act. Indeed, it would render their immunity effectively meaningless when there are non-dependent children involved, which, in addition to being unreasonable, flies in the face of our basic statutory interpretation principles and would undermine the fundamental framework of the Act. Such changes should be made by the General Assembly, not this Court. Thus, we hold that L&E § 9-509 does not violate Article 19 by precluding a non-dependent child's ability to file a wrongful death action against a parent's employer for damages arising from a workplace accident resulting in death.

## V
## CONCLUSION

We hold that the exclusivity provision of L&E § 9-509 bars a non-dependent child of a deceased covered employee from bringing a wrongful death claim against the decedent's employer. The plain language of the Act evinces the General Assembly's intent to restrict compliant employers' liability to the recovery specified in the Act itself. Further, the General Assembly considered non-dependent relatives and allowed for redress via payment of funeral and medical expenses. Because employer immunity was established in Maryland law long before the WDA was extended to non-dependent children, and because

a wrongful death action never existed at common law—and not before 1997 for adult, non-dependent—we also hold that the exclusivity provision does not violate Article 19 of the Maryland Declaration of Rights. Accordingly, we affirm the judgment of the Appellate Court of Maryland.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore County
Case No. C-03-CV-22-000661

Argued: September 5, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 3

September Term, 2024

———————————————————————

SUMMER LEDFORD

v.

JENWAY CONTRACTING, INC.

———————————————————————

Fader, C.J.
Watts
Booth
Biran
Eaves
Killough
Getty, Joseph M. (Senior Justice,
Specially Assigned),

JJ.

———————————————————————

Dissenting Opinion by Watts, J., which Biran,
J., joins.

———————————————————————

Filed: July 1, 2025

Respectfully, I dissent. I would hold that, under the plain language of Md. Code Ann., Lab. & Empl. (1991, 2016 Repl. Vol.) ("LE") §§ 9-509(a)-(b), workers' compensation is not the exclusive remedy where a covered employee dies as a result of an accidental personal injury and has only non-dependent adult children as surviving relatives.[1] In my view, Jenway Contracting, Inc., Respondent (hereinafter "Jenway"), requests that this Court rewrite the exclusive remedy provision of LE § 9-509 to advance a policy perspective not clearly shared by the General Assembly. The exclusive remedy provision of LE § 9-509 unambiguously provides that the compensation provided under the Act to covered employees and their dependents is exclusive of all other remedies, and that suit may only be filed by covered employees or their dependents if an employer fails to secure compensation under the Act or deliberately intends to cause an employee's injuries. The Act does not state, however, that the exclusive remedy provision applies to a covered employee's non-dependents.

Ms. Ledford contends that the purpose of the exclusive remedy provision of LE § 9-509 is to prevent the likelihood of "double recovery[.]" Ms. Ledford argues that because

---

[1]LE § 9-101(b) provides that an "accidental personal injury" means:

(1) an accidental injury that arises out of and in the course of employment;

(2) an injury caused by a willful or negligent act of a third person directed against a covered employee in the course of the employment of the covered employee; or

(3) a disease or infection that naturally results from an accidental injury that arises out of and in the course of employment, including:
    (i) an occupational disease; and
    (ii) frostbite or sunstroke caused by a weather condition.

the Workers' Compensation Act guarantees only that covered employees and their dependents receive compensation, the Act does not bar causes of action filed by non-dependent children of covered employees. Ms. Ledford asserts that the General Assembly would not have given non-dependent children the statutory right to file wrongful death claims if it intended for the Workers' Compensation Act to eliminate an employer's liability to non-dependent children. Simply put, I agree.

In 1997, the General Assembly amended the Wrongful Death Act for the purpose of, among others, "establishing that a beneficiary may be entitled to noneconomic damages in a wrongful death action for the death of . . . certain parents of a child *who is not a minor child*[.]" See 1997 Md. Laws 2340 (H.B. 770; Ch. 318) (emphasis added). As a result, in cases where the deceased is survived by a child who is not a minor, damages "are not limited or restricted by the 'pecuniary loss' or 'pecuniary benefit' rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable." Md. Code Ann., Cts. & Jud. Proc. (1974, 2020 Repl. Vol.) ("CJ") § 3-904(e).

CJ § 3-904(e) does not provide that an adult child's right to file a wrongful death claim is barred by the Workers' Compensation Act where a parent's death is the result of an accidental personal injury. Holding that non-dependent children are not permitted to recover non-economic damages when a parent's death arises from an accidental personal injury under the Workers' Compensation Act renders CJ § 3-904(e) "nugatory" with respect to an identifiable group of claimants. Hollingsworth v. Severstal Sparrows Point, LLC, 448 Md. 648, 659, 141 A.3d 90, 96 (2016) (A "well-established principle of statutory

construction" is that "a statute should be read so that no word, clause, sentence or phrase is rendered nugatory." (Cleaned up)).

In affirming the Circuit Court for Baltimore County's dismissal of Ms. Ledford's complaint, the Appellate Court of Maryland stated that, with the Workers' Compensation Act, the General Assembly's goal was "to effect a compromise between employers and employees" whereby covered employees and their dependents gave up the right to pursue tort litigation in favor of guaranteed compensation, and employers agreed to comply with the Act's compensation requirements to obtain immunity from suit. Ledford v. Jenway Contracting, Inc., 259 Md. App. 534, 551, 305 A.3d 498, 508 (2023). Unpersuaded by Ms. Ledford's argument that the exclusivity provision of LE § 9-509 limits only the rights of those eligible for compensation under the Workers' Compensation Act, the Appellate Court concluded that LE § 9-509(b) "eliminates 'any right of action against any person' and replaces it with 'the compensation provided under this title to a covered employee or the dependents of a covered employee[.]'" Id. at 549-50, 305 A.3d at 507 (brackets in original).[2] The Appellate Court also rejected Ms. Ledford's argument that barring non-

---

[2]The Appellate Court stated that there are only two circumstances in which an employer's liability is not exclusively governed by the Workers' Compensation Act: (1) when "an employer fails to secure compensation in accordance with the Workers' Compensation Act"; and (2) when an employer "deliberately injures or kills a covered employee[.]" Jenway, 259 Md. App. at 545, 305 A.3d at 504. The Appellate Court stated that when an employer "deliberately injures or kills a covered employee[,]" the covered employee's surviving spouse, child, or dependent may file suit for damages. Id. at 545, 305 A.3d at 504 (citing LE § 9-509(d)). Because there was no dispute that Jenway's conduct did not fall into either of these categories, the Appellate Court held that the Workers' Compensation Act remained Ms. Ledford's exclusive remedy. See id. at 548-49, 305 A.3d at 506-07.

dependent children from filing suit violates Article 19 of the Maryland Declaration of Rights. See id. at 552, 305 A.3d at 508-09.[3]

In my view, applying the traditional principles of statutory construction leads to a different conclusion. As with construing any statute, when interpreting the Workers' Compensation Act, "the goal [] is to effectuate the General Assembly's intent." Elec. Gen. Corp. v. Labonte, 454 Md. 113, 131, 164 A.3d 157, 168 (2017) (citation omitted). "If the ordinary and natural meaning of a statute's language makes the General Assembly's intent clear, the Court applies the statute's language" and "may not create an ambiguity to interpret the Act more favorably to injured employees." Id. at 131, 164 A.3d at 168 (citations omitted). Conversely, "if its language is ambiguous, the Court construes the Act 'as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.'" Id. at 131, 164 A.3d at 168 (quoting Hollingsworth, 448 Md. at 655, 141 A.3d at 94).

**The Plain Language of the Workers' Compensation Act**

The Workers' Compensation Act contains a provision that is commonly referred to as "the exclusive remedy provision" and states in relevant part:

> (a) Except as otherwise provided in this title, the liability of an employer under this title is exclusive.

---

[3]Article 19 of the Maryland Declaration of Rights states:

> Every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

(b) Except as otherwise provided in this title, the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person.

LE § 9-509(a), (b).

By its plain language, the statute states that the compensation provided to a covered employee or the dependents of a covered employee is in place of any right of action against any person. Non-dependents of a covered employee are not mentioned in the provision. The plain language of the statute does not provide that a covered employee's non-dependents receive compensation much less that any compensation is in place of any right of action against any person.

Importantly, the Workers' Compensation Act contains a provision that pertains to payment of expenses in the event that a covered employee has no dependents:

If there are no dependents, the liability of an employer or its insurer shall be *limited* to:
        (1) medical services or treatment under Part IX of this subtitle;
        (2) funeral benefits under Part XIII of this subtitle; and
        (3) assessments under § 9-1008 of this title.

LE § 9-684 (emphasis added). If there are no dependents, the provision limits an employer's liability under the Act to payment of medical services or treatment, funeral benefits, and assessments under LE § 9-1008.[4] By its plain language, this provision does

---

[4]LE § 9-1008 provides:

(a) This section does not apply to an award against the Subsequent Injury Fund.

(b) The Commission shall impose an assessment of 10%, not exceeding $4,500, against compensation awarded or likely to be awarded against an

not state that it provides compensation to a covered employee's non-dependent survivors. Nor does the provision purport to state that it is the sole or exclusive remedy available to non-dependent survivors or that it precludes a non-dependent survivor from bringing a cause of action against an employer. In fact, the provision makes no mention of a covered employee's non-dependents at all. Put simply, the provision does not state that the payment of expenses authorized in the event that a covered employee has no dependents replaces a covered employee's non-dependents' right of action against any person.

Based on the plain language of the Act, which is unambiguous, I would hold that the exclusive remedy provision of LE § 9-509 does not apply to a covered employee's non-dependent children. LE § 9-501(a) identifies the individuals who are entitled to compensation for accidental personal injuries and states that, "[e]xcept as otherwise provided, each employer of a covered employee shall provide compensation in accordance with this title to: (1) the covered employee for an accidental personal injury sustained by the covered employee; or (2) the dependents of the covered employee for death of the

---

insured or self-insured employer and not paid if the Commission determines that the compensation is not awarded or is abated because of:
      (1) death; or
      (2) lack of a covered employee or a dependent of a covered employee eligible for the compensation.

(c) On expiration of the time period within which a claim may be filed under this title, the Commission shall assess the insurer or self-insured employer $4,500 if a covered employee dies:
      (1) due to an accidental personal injury or occupational disease; and
      (2) without any surviving dependent.

(d) The Commission shall direct payment of an assessment under subsection (b) or (c) of this section into the Fund.

covered employee[.]"   (Paragraph breaks omitted).   LE § 9-509(b) states that this compensation is in place of "any right of action against any person."  The plain language of the Workers' Compensation Act demonstrates that the General Assembly intended that workers' compensation would be the exclusive remedy only for covered employees and their dependents.

Applying the exclusive remedy provision of the Act to non-dependent children expands the plain meaning of the statute.  The Workers' Compensation Act explicitly states that "the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person."  LE § 9-509(b). Stated otherwise, the exclusive remedy provision refers to the compensation provided to a covered employee or the covered employee's dependents being in place of any right of action against any person.   The unambiguous meaning of this language is that compensation provided under the Act to a covered employee and a covered employee's dependents takes the place of any right of action a covered employee or the covered employee's dependents have against any person for accidental personal injury. The exclusive remedy provision imposes no such limitation on a covered employee's non-dependent survivors.

By its plain language, LE § 9-684 does not provide compensation to non-dependent adult children of covered employees.  Where there are no dependents, LE § 9-684 provides for payment of medical services or treatment, funeral benefits, and assessments under LE § 9-1008, not compensation in place of a non-dependent child's right of action against any person.

## Legislative History of the Act

Although the plain language of the Act is unambiguous in that non-dependents do not receive compensation that replaces a right of action against others, the legislative history of the statute confirms that the General Assembly expressed no intent that a covered employee's non-dependents be part of the bargain struck by the Act. In 1914, Maryland enacted a comprehensive workers' compensation law, with the exclusive remedy provision introduced as a compromise between employers and employees. See 1914 Md. Laws 1429, 1451 (Ch. 800, § 35) (codified at Md. Code, Art. 101, § 36). The exclusive remedy provision of 1914 provided as follows:

> 36. Each employee (or in case of death his family or dependents), entitled to receive compensation under this Act shall receive the same in accordance with the following schedule, and except as in this Act otherwise provided, such payment shall be *in lieu of any and all rights of actions* whatsoever against any person whomsoever.

1914 Md. Laws 1451 (Ch. 800, § 35) (codified at Md. Code, Art. 101, § 36) (emphasis added).

The 1914 workers' compensation law stated that if employers failed to secure compensation under the statute, they would remain liable in tort to employees. See 1914 Md. Laws 1436 (Ch. 800, § 14) (codified at Md. Code, Art. 101, § 14). Additionally, employers were precluded from asserting the affirmative defenses of assumption of the risk, the fellow-servant rule, or contributory negligence in all such actions. See id. The statute stated:

> The liability prescribed by the last preceding paragraph shall be exclusive that if an employer *fails to secure the payment of compensation* for his injured employees and their dependents as provided in this Act, an injured

employee *or* his legal representative in case death results from the injury, may, at his option, elect to claim compensation under this Act, or to maintain an action in the Courts for damages on account of such injury; and in such an action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

Id. (emphasis added).

The 1914 workers' compensation law stated that an employer would lose immunity from suit if the employer deliberately intended to injure an employee. See 1914 Md. Laws 1457-58 (Ch. 800, § 44) (codified at Md. Code, Art. 101, § 45). In such instances, the employee, the employee's widow or widower, the employee's children, or the employee's dependents may elect to file suit or to collect compensation under the statute:

If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child, children or dependents of the employee shall have the privilege either to take under this Act or have cause of action against such employer, as if this Act had not been passed.

Id.

In the event that a decedent had no dependents, the statute indicated that disbursements for specific expenditures would be made: "If there be no dependents, the disbursements shall be limited to the expenses provided for in Section thirty-six hereof." 1914 Md. Laws 1453 (Ch. 800, § 35) (codified at Md. Code, Art. 101, § 36, which referred to Section thirty-seven). Notably, this provision did not state that non-dependents could not pursue a cause of action against an employer in exchange for the disbursements and, unlike the exclusive remedy provision of the Act pertaining to dependents, this provision

did not state that the disbursements were compensation or a non-dependent person's sole or exclusive remedy.

Section 36 of the Act identified the expenditures as a miscellaneous group of medical expenses not to exceed a certain sum:

> In addition to the compensation provided for herein the employer shall promptly provide for an injured employee, such *medical, surgical, or other attendance or treatment, nurse and hospital services, medicines, crutches, and apparatus* as may be required by the Commission in an amount not to exceed the sum of one hundred and fifty dollars ($150.00).

1914 Md. Laws 1454 (Ch. 800, § 36) (codified at Md. Code, Art. 101, § 37) (emphasis added).

The objective of Maryland's Workers' Compensation Act was to ensure that workers and their families are compensated for injuries arising out of and in the course of employment. See, e.g., Brady v. Ralph Parsons Co., 308 Md. 486, 496, 520 A.2d 717, 723 (1987) ("The Maryland Workmen's Compensation Act was enacted in 1914 to compensate employees who were injured in the course of their employment."). Before its enactment, employers routinely prevailed in tort litigation due to the range of affirmative defenses available to them, leaving employees and their dependents with little to no redress for workplace injuries or fatalities. See, e.g., Honacker v. W. C. & A. N. Miller Dev. Co., 285 Md. 216, 222, 401 A.2d 1013, 1016 (1979) ("At common law, a worker injured in the course of his employment could seek compensation for his injuries and other damages only through an action in tort.").

The Workers' Compensation Act protected employees and their dependents from financial hardship, informed employers of the costs of doing business, and eased court

dockets by remaining the exclusive remedy for work-related injuries.[5] In the early nineteenth century, with the industrial revolution in full force, employees were increasingly injured or killed on the job. See John Fabian Witt, The Transformation of Work and the Law of Workplace Accidents, 1842-1910, 107 Yale L.J. 1467, 1486 (1998). Although employees possessed the ability to sue their employers in tort, they routinely lost. See Price V. Fishback, Long-Term Trends Related to the Grand Bargain of Workers' Compensation, 69 Rutgers Univ. L. Rev. 1185, 1187-88 (2017). With the affirmative defenses of assumption of the risk, the fellow-servant rule, and contributory negligence available to employers, a plaintiff's chance of recovery was slim. See id. at 1188; Fabian Witt, supra, at 1476. To remedy this power imbalance, states began adopting workers' compensation laws. See Fishback, supra, at 1188. The purpose of the laws was to assure that the covered employee and the covered employee's dependents were compensated in the event of a workplace injury. There is simply nothing in the legislative history of the Maryland

---

[5]In Honaker, 285 Md. at 222, 401 A.2d at 1016, this Court noted that, with respect to a case that arose prior to the enactment of the Workers' Compensation Act, we had commented on the problems that existed, stating:

> The application of the principles of the common law to suits for personal injuries sustained in hazardous employments resulted in many cases in injustice to the parties concerned as well as to the State. It filled the courts with litigation; it became the fruitful source of perjury; it engendered bitterness between employer and employee; it resulted in great economic waste, and it turned out an army of maimed and helpless people as dependents upon the charity of friends or the public. The operation of these rules came to be regarded as "foolish, wasteful, inefficient, and barbarous," and the national government and a number of the states have now replaced them by efficient and humane laws.

(Citation omitted).

Workers' Compensation Act that indicates the General Assembly sought to make the exclusive remedy provision of the Act applicable to a covered employee's non-dependents seeking non-pecuniary damages under the Wrongful Death Act.[6]

---

[6]The majority opinion in this case violates basic principles of statutory construction that this Court is bound to adhere to. Although the Majority states that LE § 9-509 is unambiguous, in interpreting its plain language, the Majority focuses on words or phrases in isolation and speculates about the statute's meaning. After quoting Justice Killough's accurate statement that "[n]owhere in L&E § 9-509 has the General Assembly expressly extended that exclusivity to bar non-dependent children from suing for their parent's wrongful death[,]" rather than engage in a plain language analysis, the Majority "imagine[s]" what the General Assembly must have meant. Maj. Slip Op. at 14 n.15. Focusing largely on the word "exclusive," without reviewing the full text or the plain language of LE § 9-509, the Majority declares that the exclusive remedy provision applies to a covered employee's non-dependent adult children. The majority opinion fails to even set forth the complete text of LE § 9-509 and does what all of our principles of statutory construction dictate that an appellate court not do—read a word or words from a statute in isolation to reach a forced outcome. See, e.g., Bennett v. Harford Cnty., 485 Md. 461, 485, 301 A.3d 117, 131 (2023) ("We read the plain meaning of the language of the statute as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. Additionally, . . . we do not construe a statute with forced or subtle interpretations that limit or extend its application." (Cleaned up)).

The Majority bootstraps what it imagines the General Assembly meant in LE § 9-509 by purporting to review the plain language of LE § 9-684. See Maj. Slip Op. at 16-17. The Majority fails to even mention that LE § 9-684, by its plain language, addresses only what an employer's liability is "limited to" under the Act in the event that there are no dependents. LE § 9-684 states only what is available under the Workers' Compensation Act if there are no dependents. By its plain language, LE § 9-684 does not state that the expenses it provides payment for are an exclusive remedy for anyone or that the statute purports to preclude recovery by non-dependents under any other Act or statute enacted by the General Assembly.

After an incomplete and speculative plain language analysis, the majority opinion fails to even meaningfully attempt to review the legislative history of LE § 9-509 and LE § 9-684. Hopefully, the majority opinion will come to the attention of the General Assembly and it will elect to address for itself whether LE § 9-509 was intended to apply to non-dependent adult children who are not mentioned in the language of the statute.

**The Wrongful Death Act**

In 1852, sixty-two years before the Workers' Compensation Act, the General Assembly enacted Maryland's first wrongful death statute. See McKeon v. State for Use of Conrad, 211 Md. 437, 442, 127 A.2d 635, 637 (1956). Maryland's wrongful death statute enables a designated group of plaintiffs to sue on behalf of relatives whose death was caused by a third-party's negligence. See 1852 Md. Laws 303-04 (Ch. 299, §§ 1-5); see also McKeon, 211 Md. at 442, 127 A.2d at 637 (This Court noted that before 1852, Maryland provided no common law remedy for losses suffered by the negligent killing of a relative and that Chapter 299 of the Acts of 1852 "provided an action at law for the benefit of a wife, husband, parent and child of a person whose death shall have been caused by the wrongful act, neglect or default of another, against the person wrongfully causing said death."). In Section 2 of the law enacting the wrongful death statute, the General Assembly stated:

> And be it enacted, That every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused, and shall be brought by and in the name of the State of Maryland, for the use of the person entitled to damages, and in every action the jury may give such damages as they may think proportional to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought, and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the before mentioned parties, in such shares as the jury by their verdict shall find and direct[.]

1852 Md. Laws 303 (Ch. 299, § 2).

In 1937, the list of persons entitled to recover under the wrongful death statute was expanded to permit suit "by the mother of an illegitimate child and by an illegitimate child

when the deceased person was the mother of such child." McKeon, 211 Md. at 442, 127 A.2d at 637. And in 1952, the General Assembly updated this list to include an alternate class of "dependent" relatives in the event that a decedent had no surviving spouse, parent, or child to provide:

> Every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused *or* if there be no such person or persons entitled, then any person *related to the deceased by blood or marriage*, who, as a matter of fact, was *wholly dependent upon the person* whose death shall have been so caused.

See id. at 442, 127 A.2d at 637 (quoting Md. Code, Art. 67, § 4) (emphasis added).

### The Evolution of Damages under the Wrongful Death Act

Historically, parties were limited to recovery of economic (or pecuniary) losses under the wrongful death statute. See, e.g., Baltimore Transit Co. v. State for Use of Castranda, 194 Md. 421, 436, 71 A.2d 442, 448 (1950) ("[T]he jury may award damages for pecuniary losses which have already been sustained by the equitable plaintiffs and for pecuniary losses which they may probably suffer in the future as the result of the death. No damages shall be awarded as a solace for the grief or mental suffering of relatives of the deceased." (Citations omitted)). However, in 1969, the General Assembly expanded the category of damages plaintiffs were eligible to receive. See, e.g., Carolina Freight Carriers Corp. v. Keane, 311 Md. 335, 340, 534 A.2d 1337, 1340 (1988) ("It was not until 1969, however, that the type of damages recoverable was expanded from pecuniary loss alone, to include also an amount for solatium damages."). This amendment applied only to actions involving the death of a spouse or minor child:

In the case of the death of a spouse or a minor child, the damages awarded by a jury in such cases shall not be limited or restricted to the "pecuniary loss" or "pecuniary benefit" rule, but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable.

Id. at 340-41, 534 A.2d at 1340 (quoting Md. Code, Art. 67, § 4(b)).

In 1997, the General Assembly amended the wrongful death statute to establish "that a beneficiary may be entitled to noneconomic damages in a wrongful death action for the death of a child or certain parents of a child who is not a minor child" by amending Md. Code Ann., Cts. & Jud. Proc. (1974, 1995 Repl. Vol., 1996 Supp.) § 3-904(e) to provide:

For the death of a child, who is not described under subsection (d) of this section, *or a parent of a child, who is not a minor child*, the damages awarded under subsection (c) of this section are not limited or restricted by the "pecuniary loss" or "pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable.

1997 Md. Laws 2340-41 (H.B. 770, Ch. 318) (emphasis added).

The 1997 amendment to the wrongful death statute established that children who are not minor children, *e.g.*, non-dependent children, are entitled to seek noneconomic damages in a wrongful death action for the death of a parent. As such, CJ § 3-904(e) provides that "[f]or the death of . . . a parent of a child, who is not a minor child, the damages awarded under subsection (c) of this section are not limited or restricted by the 'pecuniary loss' or 'pecuniary benefit' rule[.]"[7] Based on the plain language of both of the

---

[7]Under CJ § 3-904(d), in relevant part, the damages for the death of a parent of a minor child may include damages for "parental care[,]" in addition to all of the damages permitted under CJ § 3-904(e).

- 15 -

Acts, I would hold that where an individual's death arises from an accidental personal injury under the Workers' Compensation Act, the individual's non-dependent child is not precluded from filing a wrongful death claim and recovering non-pecuniary damages. When an individual's death occurs as a result of an accidental personal injury, LE § 9-101(b), the protections of the Workers' Compensation Act are triggered only with respect to the covered employee and the covered employee's dependents. Non-dependents who are not entitled to compensation under the Act, by the plain language of the Act, are not precluded by the exclusive remedy provision from bringing an action based on a work-related injury. See LE § 9-509(b).

This interpretation renders no provision of either statute "nugatory" or mere "surplusage." See Jung v. Southland Corp., 351 Md. 165, 177, 717 A.2d 387, 393 (1998) (citations omitted). Instead, it ensures that the wrongful death statute is construed in harmony with the Workers' Compensation Act, a core tenet of the *in pari materia* doctrine. See, e.g., Powell v. Erb, 349 Md. 791, 801-02, 709 A.2d 1294, 1300 (1998) ("[I]t is well-settled that there is nothing in conflict between the Workers' Compensation Act and the Wrongful Death Act. They both unquestionably deal with recovery for injuries resulting in death. The two acts are in *pari materia* and must be construed together." (Citations omitted)).

In addition, to conclude that non-dependent survivors of workers who die as a result of an accidental personal injury are precluded from pursuing an action under the wrongful death statute would violate Article 19 of the Maryland Declaration of Rights. The goal of Article 19, which is derived from Chapter 40 of the Magna Carta, is to ensure that

individuals possess both "a right to a remedy for an injury to one's person or property" and "a right of access to the courts." Piselli v. 75th St. Med., 371 Md. 188, 204-05, 808 A.2d 508, 517-18 (2002) (citations omitted). Although the General Assembly is permitted to statutorily enact reasonable restrictions on remedies or access to the courts, all unreasonable restrictions are still prohibited by Article 19. See id. at 206, 808 A.2d at 518-19. That is why we noted in Espina v. Jackson, 442 Md. 311, 338, 112 A.3d 442, 458 (2015), after examining cases concerning the scope of Article 19, that "an abrogation of access to the courts which would leave [a] plaintiff **totally remediless** [is] unreasonable." (Emphasis in original).[8] Likewise, that principle is what led us to hold in Piselli, 371 Md.

---

[8]After oral argument in the case, this Court requested supplemental briefing from the parties and the Attorney General to address Article 19. Specifically, this Court requested supplemental briefs addressing the following issue:

> Whether Title 9 of the Labor and Employment Article would violate Article 19 of the Maryland Declaration of Rights if it bars a wrongful death claim by a non-dependent adult child against the employer of the child's deceased parent where the death resulted from an accidental personal injury arising out of and in the course of employment.

In its supplemental brief, although the Attorney General argued that applying LE § 9- 509 to non-dependent children of covered employees would not violate Article 19, the Attorney General took "no position on the ultimate question before this Court, i.e., whether the Workers' Compensation Act's exclusivity provision bars a wrongful death claim filed by a non-dependent adult child." The Attorney General's position is that "Article 19 prohibits only 'unreasonable restrictions upon traditional remedies or access to the courts,' *Piselli v. 75th St. Med.*, 371 Md. 188, 206 (2002), and preclusion of a non-dependent adult child's wrongful death claim would not constitute such a restriction." At first glance, the Majority appears to adopt the General Assembly's position, *e.g.*, "Article 19 generally prohibits unreasonable restrictions upon [1] traditional remedies or [2] access to the courts[,]" and concludes that Article 19 protects against unreasonable impediments to the pursuit of a recognized "common law right of action" and unreasonable restrictions on

- 17 -

access to courts where "fundamental rights" are concerned. Maj. Slip Op. at 32, 37-38 & n.27 (cleaned up) (brackets in original).

The Majority has concluded, however, that LE § 9-509 provides employers with "broad immunity" and that what it determines is compensation under the Act "stands in place of *any* cause of action against *any* person." Maj. Slip Op. at 14-15 (emphasis in original). With this broad holding, the Majority has concluded that non-dependent adult children and anyone else who may seek to pursue an action based on a covered employee's death are precluded not just from bringing wrongful death actions but from bringing any action at all, including common law actions that the Majority considers traditional remedies for which it acknowledges restrictions must be reasonable under Article 19.

Next, citing Espina, the Majority concludes that because Ms. Ledford is not asserting a common law remedy or a violation of a fundamental right, Article 19 does not apply. See Maj. Slip Op. at 38 n.27. To be sure, in Espina, 442 Md. at 338, 112 A.3d at 458, in addressing whether the Local Government Tort Claims Act's damages cap may circumscribe a petitioner's state constitutional claim, we stated "[w]e have indicated, with regard to causes of action to recover for violations of certain fundamental rights, that an abrogation of access to the courts which would leave the plaintiff **totally remediless** would be unreasonable." (Emphasis in original). It is an overreading of this statement, however, to conclude that this Court has held that a restriction on access to the courts violates Article 19 only where a person alleges the violation of a fundamental right. In setting forth the standard that the Majority adopts—namely, that Article 19 prohibits only "unreasonable restrictions upon traditional remedies or access to the courts," the Attorney General does not argue that a person must assert a violation of a fundamental right to be assured access to courts under Article 19. Nor do the cases relied upon by the Attorney General set forth such a requirement. See, e.g., Piselli, 371 Md. at 206, 808 A.2d at 518-19 (This Court stated that Article 19 "generally prohibits unreasonable restrictions upon traditional remedies or access to the courts but allows the Legislature . . . to enact reasonable restrictions upon traditional remedies or access to the courts. Article 19 does guarantee access to the courts but a statutory restriction upon access to the courts violates Article 19 only if the restriction is unreasonable[.]" (Cleaned up)); id. at 216, 808 A.2d at 524 (This Court held that "barring an injured child's medical malpractice claim before the child is able to bring an action is an unreasonable restriction upon the child's right to a remedy and access to the courts guaranteed by Article 19[.]"). In its brief, the Attorney General explains that Article 19 protects two interrelated rights: "(1) a right to a remedy for an injury to one's person or property; and (2) a right of access to the courts." (Cleaned up).

In the end, the Majority concludes that "it would be unreasonable to subject compliant employers to suit from non-dependent relatives of deceased covered employees when the employers have otherwise been assured that their liability is limited to the confines of the Act." Maj. Slip Op. at 39. This reasoning of course depends entirely upon the assumption that the Majority's holding that LE § 9-509 applies to non-dependent adult children is correct in the first place.

at 215, 808 A.2d at 524, that barring an injured child's medical malpractice claim pursuant to Maryland's three-year and five-year statutes of limitations would violate Article 19 by unreasonably restricting the injured child's remedy and access to the courts. And even then, such a restriction would not have wholesale barred the injured child's ability to file suit. Thus, I cannot join the Majority in holding that restricting Ms. Ledford's ability to recover anything other than payment of funeral expenses is not violative of Article 19 of the Maryland Declaration of Rights.

In sum, I would hold that compensation under the Act is as the plain language of the Act states in LE § 9-509—the exclusive remedy for a covered employee and a covered employee's dependents for accidental personal injury incurred by a covered employee. It is not the exclusive remedy for a covered employee's non-dependent children. The circuit court, therefore, erred in dismissing Ms. Ledford's complaint.

For the above reasons, respectfully, I dissent.

Justice Biran has authorized me to state that he joins in this dissent.

Circuit Court for Baltimore County
Case No. C-03-CV-22-000661
Argued: September 5, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 3

September Term, 2024

---

SUMMER LEDFORD

v.

JENWAY CONTRACTING, INC.

---

Fader, C.J.,
Watts,
Booth,
Biran,
Eaves,
Killough,
Getty, Joseph M., (Senior Justice,
Specially Assigned),

JJ.

---

Dissenting Opinion by Killough, J., which
Biran, J., joins.

---

Filed: July 1, 2025

This appeal calls upon us to honor Maryland's evolving commitment to provide meaningful remedies for beneficiaries of wrongful death victims – whether dependents under the Workers' Compensation Act (the "WCA") or the broader class that the Wrongful Death Act (the "WDA") protects. Enacted in 1852, the WDA has been expanded over time – most notably in 1973 by abolishing the pecuniary loss rule[1] and again in 1997 when the General Assembly amended Courts & Judicial Proceedings Article ("CJP") § 3-904(e) to permit a decedent's adult, non-dependent child to bring a wrongful death action to recover their noneconomic "solatium" damages — *i.e.*, mental anguish, emotional pain and suffering, and loss of services, society, companionship, comfort, protection, attention, counsel, training, guidance, and education. *See Daley v. United Servs. Auto. Ass'n*, 312 Md. 550, 553 n.2 (1988).

Summer Ledford is suing Jenway Construction, Inc. ("Jenway") pursuant to CJP § 3-904(e) for the wrongful death of her father, John Ledford. Mr. Ledford was an employee of Jenway and was killed in the workplace on March 15, 2022. Ms. Ledford's wrongful death lawsuit seeks her noneconomic "solatium" damages. She is neither seeking nor is she authorized to receive any compensation under the WCA for the wrongful death of her father, nor is she suing as a representative of Mr. Ledford's estate. Yet, the Circuit Court

---

[1] At common law, recovery in wrongful death was limited by the "pecuniary loss" rule, which confined damages to the financial support the decedent would have provided. The 1997 amendment to Section 3-904(e) of the Courts & Judicial Proceedings Article abolished that rule for adult non-dependent children, authorizing noneconomic "solatium" damages. *See Barrett v. Charlson*, 18 Md. App. 80, 90–91 (1973); *Spangler v. McQuitty*, 449 Md. 33, 54–55 (2016).

for Baltimore County dismissed Ms. Ledford's lawsuit, finding that it is barred by the exclusivity provision of the WCA. The Appellate Court of Maryland affirmed that decision in a reported opinion, *Ledford v. Jenway Contracting, Inc.*, 259 Md. App. 534 (2023).

I disagree with the majority's holding that the Workers' Compensation Act's exclusivity provision, codified under the Labor and Employment Article ("L&E") § 9-509, for "benefits under this title" strips wrongful death beneficiaries of their right to sue for noneconomic damages. No Maryland Supreme Court decision has, until now, extended L&E § 9-509 immunity in a case brought by someone who is ineligible for WCA benefits. The majority advances no rationale or legislative history demonstrating that, in enacting the 1997 amendment to the Wrongful Death Act, the General Assembly intended the Workers' Compensation Act to extinguish the independent cause of action it had just created. It simply asserts that to be the case. Permitting adult non-dependent children to hold employers to account for their wrongful acts does not upset any reciprocal trade-off – it merely honors the separate, statutorily conferred remedy the General Assembly crafted for them in 1997 for the death of a parent. I respectfully dissent.

I.

At issue in this appeal is whether L&E § 9-509's exclusivity clause – limiting an employer's liability to benefits "under this title" – extends to an adult non-dependent child who is ineligible for, and does not claim any, workers' compensation benefits. The majority answers that question in the affirmative and holds that the Workers' Compensation Act's exclusivity provision bars Ms. Ledford's wrongful death claim. Majority Op. at 3. I

2

disagree. Under L&E § 9-509(a), the WCA plainly provides that an employer's liability is "exclusive" *under this title – i.e.*, solely to covered employees or dependents. If there is any carve-out, it must appear within the WCA itself. Because adult, non-dependent children are neither "covered employees" nor "dependents," nothing in L&E § 9-509 eliminates their CJP § 3-904(e) cause of action.

The majority's opinion, in affirming the lower court, never meaningfully interprets the statutory provision relied upon by the Petitioner in her suit – CJP § 3-904(e). Although the majority devotes pages to WCA exclusivity, they downplay the independent nature of Ms. Ledford's wrongful death claim. In doing so, they side-step our decision in *Mummert v. Alizadeh*, 435 Md. 207, 222 (2013), where we held that wrongful death actions are not subject to certain defenses or procedural bars applicable to the decedent. Instead, the majority bars Ms. Ledford's suit solely because Mr. Ledford would have been barred from suing Jenway under the WCA – an approach that disregards both the statutes' plain language and controlling precedents.

The majority reads L&E § 9-509 to confer blanket immunity regardless of "who files suit." Majority Op. 21 n.17. But that interpretation eviscerates the entire Workers' Compensation framework. If immunity truly barred every tort claim arising from a covered employee's workplace death – regardless of the claimant's status – then the entire structure of the WCA would be surplusage. There would be no point to defining which workers qualify as "covered employees," who counts as a "dependent," which dependents may recover death benefits, when an employer may be sued, or when third parties can be sued.

3

All those provisions in the WCA become meaningless if employers enjoy blanket immunity. But that is not what the WCA says. Because the General Assembly did not cloak employers with absolute immunity in every tort action, there is room for a separate statutory grant of a wrongful death cause – namely, CJP § 3-904(e) – to apply even when the decedent was a covered employee.

Although the majority purports to premise their decision, in part, on the risk of double recovery, the majority concedes that this risk is non-existent in this case because the Workers' Compensation Act provides Ms. Ledford with nothing. The majority's hypothetical about a double recovery where a covered employee has dependents and adult non-dependents collapses once we consider that Maryland courts have for well over 100 years rejected the "double recovery" argument to bar claims and has held to the principle that "[i]f . . . there are two separate, distinct and independent causes of action arising out of the same wrongful or negligent act, then . . . they may be prosecuted concurrently." *Stewart v. United Elec. Light & Power Co.*, 104 Md. 332, 340 (1906). There is no "double recovery" against a tortfeasor because "there is no duplication in the elements of damages between the two actions." *Globe Am. Cas. Co. v. Chung*, 76 Md. App. 524, 537 (1988).

Nor is there any "double liability" because non-dependent wrongful death beneficiaries like Ms. Ledford were never part of the 1914 "Grand Bargain." Non-dependents receive no benefits under the WCA and so gave up no tort rights in exchange. There is, therefore, no risk of "double liability" when an employer pays benefits to dependents under the WCA and faces a separate wrongful death suit by a non-dependent

4

adult child because that child's claim lies wholly outside the compensation scheme the employer bargained into.  As the United States Supreme Court recognized over 100 years ago in a case brought by the personal representative of a deceased employee to recover damages for decedent's conscious pain and suffering, and damages for pecuniary loss to the decedent's relatives or next of kin, there is no double liability for the employer:

> Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other.  One is for the wrong to the injured person, and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries, and is confined to their pecuniary loss through his death.  *One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a double wrong*.

*St. Louis, & I.M. & S. Ry. Co. v. Craft*, 237 U.S. 648, 658 (1915) (emphasis supplied).

By extending L&E § 9-509 to bar surviving non-dependent children like Ms. Ledford from bringing a WDA claim, the majority breaks new ground by applying the Workers' Compensation Act to extinguish a legislatively created remedy for individuals the WCA does not cover.  That interpretation flouts our directive to read statutes *in pari materia*.  In both effect and in intent, the majority immunizes tortfeasors simply because they are employers – precisely the opposite of what the General Assembly intended in 1997 when it expanded the Wrongful Death Act to cover adult, non-dependent children.  Had the General Assembly truly wished to shield employers from such claims, it would have said so explicitly in the WDA by conditioning the right to bring an action under CJP § 3-904(e) on the decedent not being a "covered employee" as that term is defined in the Workers' Compensation Act.  Instead, the General Assembly deliberately created this independent

5

noneconomic cause of action to close a remedial gap – a gap the majority has now re-opened. Our task is not to rescue employers from burdens the General Assembly chose not to impose. Immunity should not be presumed; it must be clearly and affirmatively granted.

A.

*The Wrongful Death Act*

Maryland's Wrongful Death Act was enacted in 1852 to "remedy the common law's unaccommodating treatment of a tort victim's family." *Spangler v. McQuitty*, 449 Md. 33, 51 (2016). Prior to that enactment, common law barred any tort recovery upon the death of the victim. In passing the WDA, the General Assembly allowed "the decedent's beneficiaries or relatives to recover damages for loss of support or other benefits that would have been provided, had the decedent not died as a result of another's negligence." *Id.* at 53. In so doing, it created a new and independent cause of action – not a derivative or representative claim tethered to the decedent's available remedies, but one brought by aggrieved family members to recover their own losses. *Id.* at 54–61; *see also FutureCare NorthPoint, LLC v. Peeler*, 229 Md. App. 108, 130–36 (2016) (Maryland's wrongful death statute creates a standalone right in the beneficiaries that does not subject them to certain defenses that might have applied to the decedent's personal injury claim.).

The WDA permits an action "against a person whose wrongful act causes the death of another." CJP § 3-902(a). It defines "wrongful act" to include "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." CJP § 3-901(e). A wrongful death claim

6

"shall be for the benefit of the wife, husband, parent, and child of the deceased person."

CJP § 3-904(a)(1). If no such person exists, "an action shall be for the benefit of any person related to the deceased person by blood or marriage who was substantially dependent upon the deceased." CJP § 3-904(b). Under the WDA, "damages may be awarded to the beneficiaries[2] proportioned to the injury resulting from the wrongful death." CJP § 3-904(c)(1).

In 1973, the General Assembly amended the WDA to expressly authorize noneconomic damages for claimants by amending the predecessor statute to CJP § 3-904, Md. Code Ann., art. 67, § 4(b) (repealed 1973). In so doing, the General Assembly eliminated the common law pecuniary loss rule and expressly authorized damages to wrongful death beneficiaries for "mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable." *Id.* The intermediate appellate court recognized this amendment as "remedial in nature"[3] and held that it "should be accorded a liberal

---

[2] The term "Beneficiary" is defined in the WDA as "an individual who may bring an action for wrongful death under Title 3, Subtitle 9 of this article." CJP § 10-1101(b).

[3] The Wrongful Death Act is in derogation of the common law and, as such, must be strictly construed. *See Spangler*, 449 Md. at 61. Yet CJP § 3-904(e) and its predecessor statute, art. 67, § 4(b), represent a paradigmatic remedial carve-out, abolishing the archaic common-law pecuniary loss rule. Our courts have recognized that § 3-904(e) is a remedial provision that must be liberally construed to effectuate the General Assembly's intent to authorize noneconomic "solatium" damages for non-dependent adult children. *See Barrett v. Charlson*, 18 Md. App. 80, 90–91 (1973) (construing the predecessor statute). The majority ignores the remedial nature of CJP § 3-904(e) in its opinion.

7

construction consistent with the objective sought to be accomplished by the General Assembly." *Barrett v. Charlson*, 18 Md. App. 80, 92 (1973).

In 1997, the General Assembly broadened the remedies available under the WDA by expressly authorizing noneconomic damages for adult, non-dependent children. *See* 1997 Md. Laws, ch. 318. After a comprehensive study by a legislative task force, the General Assembly amended CJP § 3-904(e), formally abolishing the pecuniary loss rule for adult non-dependent children and authorizing a standalone cause of action for noneconomic damages. As a result, where a decedent is survived by an adult child, damages are not limited by any pecuniary loss and may include noneconomic damages. *See* CJP § 3-904(e).

### The Workers' Compensation Act

The Workers' Compensation Act was enacted in 1914. Under the WCA, an injured employee or his dependents receive predetermined benefits in exchange for a waiver of additional tort claims. *See Brady v. Ralph M. Parsons Co.*, 327 Md. 275, 278 (1992). Thus, the Workers' Compensation Act is designed as a no-fault benefits system – what some refer to as the "Grand Bargain" of 1914. *See id.* Under that bargain, in exchange for guaranteed, albeit limited, compensation, employees and their dependents gave up the right to sue. *See, e.g., Bd. of Educ. of Prince George's Cnty. v. Marks-Sloan*, 428 Md. 1, 38 (2012) (school custodian barred from suing his employer in tort because such a suit was barred pursuant to L&E § 9-509's exclusivity clause).

8

The purpose of the WCA is "to protect workers and their families from hardships inflicted by work-related injuries" and occupational diseases. *See Gang v. Montgomery Cnty.*, 464 Md. 270, 278 (2019) (quoting *Roberts v. Montgomery Cnty.*, 436 Md. 591, 603 (2014)). Under the WCA, an employer or insurer is liable to pay compensation to employees covered under the WCA, who suffer an accidental personal injury, or who develop an occupational disease, in the course of their employment. *See* L&E, Title 9, Subtitle 6, Parts I-XI. "Compensation awarded on this fault-free basis under the statutory plan substitutes for an employee's common law right to bring a fault-based tort suit against an employer for damages resulting from the employee's injury or disablement on the job." *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 438 (1996); *see also* L&E § 9-509(b) (providing that compensation awarded to a covered employee under the WCA "is in place of any right of action against any person").

The WCA thus "strikes an important balance between the need to provide some form of financial benefits to injured or sick employees and the need, of both employers *and* employees, to avoid expensive and unpredictable litigation over accidents in the workplace." *DeBusk*, 342 Md. at 438 (emphasis in original).

The Workers' Compensation Act provides, in pertinent part, that:

(a) Employers. Except as otherwise provided in this title, the liability of an employer *under this title* is exclusive.

(b) Covered employees and dependents. Except as otherwise provided in this title, the compensation provided *under this title to a covered employee or the dependents of a covered employee* is in place of any right of action against any person.

9

LE § 9-509 (a)-(b) (emphasis supplied). Notably, the WCA uses the term "dependent" in the statute, but not the term "beneficiary." Although "dependent" is not defined in the WCA, we have held that "a 'dependent' within the meaning of the [WCA] as 'one who relies wholly or in part upon a workman for the reasonable necessities of life at the time of his accidental injury.'" *Martin v. Beverage Cap. Corp.*, 353 Md. 388, 403 (1999) (quoting *Mario Anello v. Dunn*, 217 Md. 177, 180 (1958)).

II.

A.

*Statutory Interpretation Principles*

Central to this case is whether the exclusivity provision of the WCA applies only to claims "under this title" or also to claims under some other title, namely the WDA. "We assume that the General Assembly's intent is 'expressed in the statutory language' and therefore begin our analysis with the plain language of the statute." *Spevak v. Montgomery Cnty.*, 480 Md. 562, 571–72 (2022) (quoting *Moore v. RealPage Util. Mgmt., Inc.*, 476 Md. 501, 510 (2021)). Our task in statutory interpretation is to "ascertain and effectuate the real and actual intent of the Legislature." *United Parcel Service v. Strothers*, 482 Md. 198, 212 (2022). When the plain language of a remedial statute is clear, as it is here, that is the end of our inquiry. *Montgomery Cnty. v. Deibler*, 423 Md. 54, 60 (2011). We do not resort to strained constructions that impose limitations absent from the statutory text, nor do we read statutes in isolation. As this Court explained in *Lockshin v. Semsker*, 412 Md. 257, 276

10

(2010), we harmonize the language of one provision with related statutory sections to effectuate the General Assembly's overall purpose.

There is no conflict between the Workers' Compensation Act and the Wrongful Death Act in this case: both address recovery for injuries resulting in death. *See Powell v. Erb*, 349 Md. 791, 801 (1998) (citing *McKeon v. State for Use of Conrad*, 211 Md. 437, 445 (1956)). The two statutes are *in pari materia* and must be read together. *See Knoche v. Cox*, 282 Md. 447, 458 (1978); *Farmers & Merchants Nat'l Bank of Hagerstown v. Schlossberg*, 306 Md. 48, 56 (1986); *Taylor v. State, Use of Mears*, 233 Md. 406, 407–13 (1964). "Statutes which relate to the same . . . general subject matter, and which are not inconsistent with each other, are *in pari materia*, and should be construed together so that they will harmonize with each other and be consistent with their general object and scope, even though they were passed at different times and contain no reference to each other." *Uninsured Emprs Fund v. Pennel*, 133 Md. App. 279, 293 (2000) (citations omitted).

Although both the WCA and the WDA address deaths resulting from workplace injuries, they serve distinct remedial purposes and cover different classes of claimants. L&E § 9-509 confines workers' compensation remedies exclusively to employees and their dependents, while the WDA independently furnishes a cause of action for non-dependent adult children and other survivors outside that scheme. Interpreting L&E § 9-509 to extinguish a non-dependent adult child's wrongful death claim under CJP § 3-904(e) would nullify a remedy the General Assembly explicitly created and effectively rewrite both statutes – an outcome our duty to harmonize related laws does not permit.

11

Summer Ledford was not a dependent of her deceased father and is suing Jenway for her noneconomic damages resulting from his wrongful death. She is not seeking workers' compensation benefits. The General Assembly amended the WDA in 1997 – long after the so-called "Grand Bargain" of 1914 – to provide Ms. Ledford and adult, non-dependent children like her an independent cause of action to recover noneconomic damages for a parent's wrongful death. *See* CJP § 3-904(e). Read plainly, that statute protects a broad class of beneficiaries – including non-dependent adult children – from the tragic consequences of a tortfeasor's negligence. It imposes no dependency requirement, nor does it tether recovery to the limited remedy of workers' compensation benefits.

By contrast, the WCA compensates only employees and qualified dependents "under this title" for pecuniary losses. *See* L&E § 9-509(b). It does not provide for emotional distress or loss of companionship. Thus, the statutes serve different purposes, operate in different spheres, and cover different classes of plaintiffs. As to non-dependent children, there is no overlap despite the majority's efforts to construct one. As Justice Watts's dissent shows, the legislative history of the WCA makes plain that the 1914 exclusivity provision in the WCA was never meant to bar non-dependent adult children from the separate non-pecuniary remedies available under the WDA. Dissenting Op. of Watts, J., at 8–12.

### *"Under This Title"*

I agree with the majority to the extent that "the liability of an employer under this title is exclusive" for claims the WCA itself covers. The WCA provides that a covered

12

employee's sole remedy is workers' compensation, and it extends that exclusivity to the employee's dependents. But adult non-dependent children fall into neither category: they are neither "covered employees" nor "dependents" under the WCA. Nowhere in L&E § 9-509 has the General Assembly expressly extended that exclusivity to bar non-dependent children from suing for their parent's wrongful death. The WDA – including CJP§ 3-904(e) – makes no reference to, and imposes no conditions on, the decedent's eligibility for workers' compensation. Because the WCA never purports to reach non-dependents, it cannot, by its own terms, strip them of any right to sue.

The prefatory clause in L&E § 9-509 – "[e]xcept as otherwise provided in this title, the liability of an employer *under this title* is exclusive" – means exactly what it says: an employer's immunity applies only to *claims under the Workers' Compensation Act* itself, subject to the exceptions spelled out in that same title (*e.g.*, deliberate intent, lack of coverage, third-party subrogation). It does *not* say "no one may ever sue the employer in tort under any title" or that worker's compensation "is the exclusive remedy against an employer." Further, the majority fails to explain why the phrase "under this title," does not cabin immunity to the WCA. The General Assembly drew careful lines in the WCA: it defined who is a "covered employee," who counts as a "dependent," and when third-party or intentional tort claims can proceed. By omitting any reference to non-dependent beneficiaries, the legislature implicitly preserved their right to bring wrongful death claims under a *different* title.

13

The majority adopts an expansive view of employer immunity not found in the WCA's text: "immunity is not contingent on simply who files suit." Majority Op. at 21 n.18. Under that reading, immunity applies even to persons who receive no WCA benefits. The majority reasons that "[i]f the General Assembly had intended the 1997 revision to the WDA to authorize claims by non-dependent children against the employers of their deceased parents, it could have reciprocally revised the [WCA's] exclusivity provision to so provide. It did not." Majority Op. at 38–39. But that logic is backwards: it treats the WCA's silence as determinative of the WDA's scope when our task is to interpret each statute on its own terms and in harmony with the other.

The WCA and the WDA stand side by side – each governing distinct rights, remedies, and beneficiaries. If the General Assembly had intended to expand WCA immunity to bar non-dependent wrongful death suits, it would have done so in the WCA. But in 1997, the General Assembly amended only CJP § 3-904(e), leaving the WCA untouched. It strains logic to suggest that the General Assembly sought to expand immunity to claims brought by non-dependents while saying nothing about it in the statute that actually confers it, the WCA. As discussed above, the WDA imposes no dependency requirement and does not condition suit on whether the decedent was a "covered employee" under the WCA. Insisting that the WCA must always trump the WDA assumes what needs to be proved – that the WDA is merely an afterthought and must yield to a statute – the WCA – that it did not amend. That assumption runs contrary to the basic principles of statutory interpretation and legislative intent.

14

The majority's invocation of dictionary definitions of the word "exclusive" in L&E § 9-509(a) is not persuasive. Majority Op. at 13–14. The majority elevates "exclusive" into a freestanding shield against any lawsuit, without regard to the limiting clause that follows – "under this title." The statute does not simply say that the employer's liability is exclusive; it says that "the liability of an employer *under this title* is exclusive." The "*liability*" being described is the liability of an employer "*under this title*." Not the "liability" of the employer under some other title or under all titles. Yet the majority reads "exclusive" in isolation, detached from that qualifying phrase. According to the majority, "[t]he word 'exclusive' is not further modified or constrained to a particular claimant, [4] and it is not the job of this Court to supply such a restriction." Majority Op. at 14 n.15. In other words, because the statute does not expressly limit "exclusive" to "covered employees" or "dependents," the majority interprets it to bar any tort action by anyone, regardless of whether they fall within the WCA's scope.

But that reasoning ignores the limiting language the General Assembly actually included in the WCA. L&E § 9-509(a) provides that the right to compensation is exclusive *only* "under this title." That clause cannot be ignored. Indeed, Maryland has long recognized the interpretive canon *expressio unius est exclusio alterius* – "the expression of one thing is the exclusion of another" – as a bedrock principle of statutory construction.

---

[4] The majority disagrees with my characterization that it elevates the word "exclusive" into a "freestanding shield" and then, within the same paragraph, confirms that characterization.

*See Griffin v. Lindsey*, 444 Md. 278, 288 (2015). Under this canon, statutory lists and qualifications carry their own internal limits: "a court will draw the negative inference that no other items may be added." *Potomac Abatement, Inc. v. Sanchez*, 424 Md. 701, 712 (2012). Thus, when the General Assembly limits exclusivity to claims brought "under this title," it necessarily excludes immunity from claims brought outside it.

Had the General Assembly intended to shield employers from all tort claims regardless of their connection to the WCA, it could have done so. It did not. The qualifier "under this title" marks the boundaries of the statute's reach – boundaries the majority now discards. We are not free to erase limits established by the General Assembly. Workers' Compensation is a bargain: employees and dependents relinquish tort remedies in exchange for guaranteed benefits. But where that exchange never occurs – as with Ms. Ledford, a non-dependent who receives no compensation – there is no reciprocal promise to justify immunity.

*Harmonizing with CJP § 3-904(g)*

The structure and language of CJP § 3-904(g) lend some textual support to the conclusion that the General Assembly did not intend to immunize employers from noneconomic claims brought by non-dependent wrongful-death beneficiaries. Section 3-904(g) provides:

> (1) Except as provided in paragraph (2) or (3) of this subsection, an action under this subtitle shall be filed within three years after the death of the injured person.

16

(2)(i) In this paragraph, "occupational disease" means a disease caused by exposure to any toxic substance in the person's workplace and contracted by a person in the course of the person's employment.

(ii) If an occupational disease was a cause of a person's death, an action shall be filed:

1. Within 10 years of the time of death; or
2. Within 3 years of the date when the cause of death was discovered, whichever is shorter.

By its plain terms, this limitations provision applies to "an action under this subtitle"—*i.e.*, wrongful death claims under CJP § 3-904 – rather than to claims brought under the Workers' Compensation Act. It therefore establishes a specialized deadline for cases in which death results from latent, long-developing occupational diseases (e.g., mesothelioma). In particular, the statute contemplates that the disease may have been "contracted by a person in the course of the person's employment," signaling that a wrongful death action may arise even when the decedent was a covered employee, and the exposure occurred in the workplace – potentially implicating either the employer or third-parties.

Nothing in the WCA or in CJP § 3-904(g) precludes a covered employee's estate or dependents from pursuing a third-party supply-chain or manufacturer defect claim under L&E § 9-901. Likewise, it does not prevent the employer (or its insurer), having paid compensation, from seeking subrogation under L&E § 9-902. Likewise, nothing in CJP § 3-904(g) prohibits an adult, non-dependent child from filing a timely wrongful death action against the employer of a covered employee under CJP § 3-904(e). Thus, the "occupational

17

disease" definition of CJP § 3-904(g) applies to scenarios where the employer itself was the source of toxic exposure. The legislative history cited by the majority does not support the conclusion that employers are immune from liability when they themselves were the source of the toxic exposure. Majority Op. at 25–26 n.23.

In crafting a comprehensive, calibrated scheme for workplace deaths due to exposure to toxic substances, the General Assembly accounted for every potential claimant:

- Covered employees (or their estates/dependents) retain the right to bring a third-party toxic-exposure claim under L&E § 9-901.

- Employers (and their insurers) stand in the employee's shoes and may pursue that same claim by subrogation under L&E § 9-902.

- Non-dependent wrongful-death beneficiaries – the class to whom the WCA does not afford any recovery – may seek an independent solatium remedy within the limitations period set by CJP § 3-904(g).

Thus, the text of CJP § 3-904(g) supports the argument that the General Assembly deliberately preserved wrongful death causes of action in the occupational disease context, particularly for adult non-dependent children (or parents of non-minor children) who otherwise receive no Workers' Compensation benefits. When read alongside the remedial-construction mandate of *Waddell v. Kirkpatrick*, 331 Md. 52, 56 (1993), and the independent-action holding of *Mummert*, 435 Md. at 224, it is evident that the legislature intended non-dependent beneficiaries to pursue solatium damages even when the

18

workplace was the source of their parent's death. The majority's contrary interpretation undermines that carefully wrought legislative scheme.

B.

The majority places great reliance on *Knoche v. Cox*, 282 Md. 447 (1978), and *Lowery v. McCormick Asbestos Co.*, 300 Md. 28 (1984). But those cases do not compel the result the majority reaches in this case. In *Knoche*, a dental assistant was shot while at work, and her husband's wrongful death suit was barred because her death arose out of the course of employment under the WCA's exclusivity provision. *Knoche*, 282 Md. at 457–58. Likewise, in *Lowery*, an employee exposed to asbestos who received workers' compensation benefits was precluded from pursuing a separate tort action against his employer. *Lowery*, 300 Md. at 49.

Both *Knoche* and *Lowery* stand for the proposition that a qualified recipient of workers' compensation benefits is barred from pursuing an additional tort recovery. In contrast, Ledford is not a qualified recipient of WCA benefits. Yet, the majority relies on language in *Knoche* stating that:

> [t]his Court, long past and to the present day, has uniformly said that, aside from the exceptions created by the Act itself, the operation of the law is exclusive of all other remedy and liability, as to both the employer and employee who come within the purview of the Act, with respect to all injury arising out of and in the course of the employment.

*Id.* at 452–53 (citing *Victory Sparkler & Specialty Co. v. Francks*, 147 Md. 368, 375 (1925)). We were guided in *Knoche* by our decision in *Victory Sparkler*, just 11 years after the passage of the WCA, where we held that the sole remedy for a child injured in the

19

workplace was under the WCA. *See Victory Sparkler & Specialty Co.*, 147 Md. at 375.

We reasoned that:

> [the WCA] has given to labor what it never had before, and has taken from capital what it had always enjoyed, and has compensated the latter by limiting its liability, while engaged in hazardous employment, and conforming to the act, to the payment of compensation only to those who sustain an injury, arising out of and in the course of their employment, that is compensable under the act.

*Victory Sparkler & Specialty Co.*, 147 Md. at 376–377.

But the language in *Knoche*, and by extension *Victory Sparkler*, regarding the exclusivity of the Workers' Compensation Act does not foreclose an independent wrongful death action brought by a non-dependent adult child. In *Knoche*, the Court held that the WCA barred a wrongful death suit by the decedent's dependent, where the employer had secured compensation under the WCA for the employee and her eligible beneficiaries. *Knoche*, 282 Md. at 448. That result is consistent with the structure of the WCA, which expressly provides compensation to injured employees and, in the event of death, to dependent survivors. The exclusivity principle makes sense in that context because those plaintiffs are within the class of persons the WCA is designed to protect, and they have received – or are entitled to receive – a statutory remedy. We merely held in those cases that the WCA's exclusivity provision barred additional tort recovery for those already covered under its scheme. For example, if Ms. Ledford was a dependent of her father, *i.e.*, covered under the WCA scheme, her sole remedy would be under the WCA.

20

In contrast, however, Ms. Ledford is not a dependent of her father and is entitled to no recovery whatsoever under the WCA, even though she is an eligible statutory beneficiary under the Wrongful Death Act. As such, her claim is not barred by the WCA because that Act does not offer her a remedy of which to be exclusive. Although *Knoche* and its predecessor, *Victory Sparkler*, contain broad statements about the WCA's exclusivity to other rights and remedies, the language we used was pure dicta because those cases did not concern "rights or remedies" outside the WCA and were not necessary for resolution of those cases. Moreover, those statements must be viewed in the context in which they were made: where the injury or death is compensable under the WCA and the plaintiff is a dependent or covered employee within the WCA's remedial scope. As *Victory Sparkler* itself explained, the exclusivity of the WCA was the product of a legislative trade-off: employees gave up the right to sue in court in exchange for guaranteed compensation, and "capital" (*i.e.*, employers) received limited liability in return. 147 Md. at 376–77. But where a plaintiff receives no compensation, she is not part of that bargain – and the employer receives a windfall, not a fair exchange, by invoking exclusivity to bar a wrongful death claim by someone whom the WCA does not cover.

The majority also relies on the Appellate Court's decision in *Austin v. Thrifty Diversified, Inc.*, 76 Md. App. 150 (1988). But that case is not helpful as authority on a claim pursuant to CJP § 3-904(e) because the intermediate appellate court does not discuss the statutory basis for the parents' claim other than to state that the complaint in that case alleged negligence, a failure to supervise and warn, and a violation of the Maryland

21

Occupational Safety Act, which was repealed in 1991. *Id.* at 152. Even if the parents in

*Austin* alleged wrongful death pursuant to the WDA, at the time, the parents were only

eligible to recover solatium damages if the decedent was unmarried and under the age of

22 or the parents contributed more than 50% of the decedent's support. *See Carolina*

*Freight Carriers Corp. v. Keane*, 311 Md. 335, 333–34 (1988). That is no longer the law,

as CJP § 3-904(e), as amended in 1997, closes that remedial gap. Thus, if *Austin* was

decided today, the parents could recover solatium damages under the WDA

notwithstanding the requirements of CJP § 3-904(d).

Perhaps recognizing that their decision leaves an entire class of plaintiffs without a

remedy, the majority – like the intermediate appellate court before them – attempts to

reframe burial expenses as a form of "compensation"[5] or "restitution." Majority Op. at

12–13, 15–19. They rely on three provisions: L&E § 9-509(d), which permits dependents

to sue when the employer deliberately kills a covered employee; L&E § 9-684, which limits

liability to medical and funeral expenses when there are no dependents; and L&E § 9-689,

which requires the employer or insurer to pay the expenses of last sickness and burial in

---

[5] The majority's reliance on ambiguity surrounding the word "compensation" is misplaced. It cites *Univ. of Md. Medical Sys. Corp. v. Erie Ins. Exch.*, 89 Md. App. 204 (1991), which construed "compensation" narrowly in the context of whether attorney's fees and pre-hearing medical expenses qualified as recoverable benefits. That case turned on the availability of appellate stays – not wrongful death recovery – and expressly noted that the term "compensation" has multiple meanings throughout the Act. *Id.* at 211–12. But nothing in *Erie* or the WCA supports the proposition that burial expenses are the type of individualized, loss-based awards that trigger the exclusivity provision in L&E § 9-509. Statutory exclusivity is a substantive bar, not a semantic riddle, and "compensation" must be read in context, not in isolation, to serve the remedial goals of the statute.

such cases. From this, the majority infers that the WCA bars any further recovery, regardless of dependency status.

But none of these provisions define such payments as "compensation" in the sense relevant to L&E § 9-509's exclusivity clause. They do not replace lost income, provide for dependents, or compensate anyone for emotional or relational loss. Nor do they even specify to whom the reimbursements are paid. These are administrative obligations – meant to ensure that basic expenses are covered, not to make survivors whole. This argument also assumes that non-dependents, such as Ms. Ledford, have a legal obligation to pay the funeral expenses of a loved one. All L&E § 9-689 does is shift costs to employers that otherwise might be borne by a hospital or other healthcare provider, or by the state or a local government. The majority cites no case or legislative history that supports the idea that L&E § 9-689 was designed primarily to benefit non-dependent survivors of the covered employee.

To treat the payment of a funeral bill as a legal substitute for wrongful death damages is to conflate cost-shifting with compensation. Burial expenses may alleviate a financial burden, but they do not account for the loss of parental love, guidance, or support. Nothing in the text or history of the Wrongful Death Act suggests that the General Assembly intended to extinguish independent wrongful death claims merely because an employer satisfied this narrow obligation.

By elevating a minimal reimbursement mechanism into a full bar against otherwise valid claims, the majority again rewrites the statute. This is not faithful to legislative

design, nor compatible with ordinary principles of statutory construction. As we have repeatedly recognized, "[i]n every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Lockshin*, 412 Md. at 276. Presuming that reimbursement of a funeral expense extinguishes the wrongful death rights of a non-dependent child is precisely the kind of unreasonable result *Lockshin* warns against.

## C.

Nothing in either the Workers' Compensation Act or the Wrongful Death Act compels the result the majority reaches. To the contrary, our precedents point the other way. In *Taylor v. State, Use of Mears*, the Court permitted the illegitimate children who recovered death benefits under the WCA from the decedent's employer to file a wrongful death action against the responsible party. 233 Md. at 412–13. The legal issue resolved in *Taylor* was that a wrongful death cause of action survived for beneficiaries who had already been compensated under the WCA. *Id.* Thus, *Taylor* embodies the principle that the WCA's exclusivity provision does not implicitly repeal or subsume the WDA's independent cause of action.

The majority responds that *Taylor* involved dependents suing a third party under the subrogation provision now codified at L&E § 9-901, and is therefore distinguishable. *See* Majority Op. at 30–31. That is true in part – but beside the point. *Taylor* stands for more than the application of a statutory exception. The essential takeaway from *Taylor* is that two remedial statutes — the WCA and WDA — may overlap without one nullifying the

24

other. When faced with a claim brought under the WDA by someone who had received WCA benefits, the Court did not import WCA immunity into the wrongful death framework. The Court in *Taylor* harmonized the statutes, giving full effect to both. That principle applies here with equal force.

To be sure, Ms. Ledford is not a WCA "dependent," and her claim is not governed by L&E § 9-901. But that distinction strengthens, rather than weakens, the case for allowing her suit to proceed. If a beneficiary's WDA claim survived *despite* WCA compensation in *Taylor*, then surely it survives *where no compensation right exists at all*. *Taylor* rejected categorical displacement of the WDA by the WCA — and the majority's holding today does precisely what *Taylor* refused to do.

Although the majority criticizes this dissent by pointing out distinctions between the case at bar and the case in *Taylor*, and for that matter the dissent's citation to *Mummert*, those criticisms are of no moment. *See* Majority Op. at 27, 29–31. Certainly, *Taylor* and *Mummert* involved different factual scenarios than this case and distinctions can be drawn. Nor does any previous decision fully anticipate every permutation of WCA/WDA statutory framework. In fact, *none* of the cases cited by the majority in its opinion hold that an adult, non-dependent's wrongful death claim CJP § 3-904(e) is barred by the WCA. What matters is not the factual symmetry in our previous decisions, but rather the legal propositions that those cases establish – namely, our consistent approach to harmonizing remedial statutes that are *in pari materia*.

25

Likewise, in *Mummert* this Court held that a beneficiary's wrongful death claim is *independent* of any potential claim the decedent might have had. *Mummert*, 435 Md. at 210 ("We hold that the Legislature did not intend to define 'wrongful act' so as to render a wrongful death claim contingent on the decedent's ability to file timely a tort claim prior to death"). That holding means exactly what it says: a beneficiary may maintain a wrongful death suit even if the decedent could not or did not sue in his lifetime. While *Mummert* acknowledged that certain substantive defenses — such as assumption of risk or parental immunity — can still apply, that is a far cry from the sweeping immunity the majority now imports into the WDA. And nothing in *Mummert* (or *Spangler v. McQuitty* which followed *Mummert*) suggests that the same will of the General Assembly which prevents a statute of limitations defense from barring a wrongful death suit would somehow permit unlimited immunity for employers.[6]

The majority's decision today is unsupported by established principles of statutory construction and fails to harmonize the two statutes – in fact, it does not meaningfully deal with the Wrongful Death Act at all. The WCA itself defines its own limitations and

---

[6] The majority contends that this dissent fails to "confront" its reading of *Mummert*. Majority Op. at 29 n.25. To the contrary, *Mummert's* core holding is that the General Assembly created an independent wrongful death cause of action, free from the procedural bars and immunities that might have applied to the decedent. *See Mummert*, 435 Md. at 210, 219. While *Mummert* acknowledges traditional substantive defenses (assumption of risk, parental immunity, etc.), it provides no support for the majority's position that the immunity afforded employers under the Workers' Compensation Act for claims by dependents is exported into the Wrongful Death Act for claims brought by non-dependents. *See id.* at 221–22.

26

exceptions. But nothing in L&E § 9-509 mentions wrongful death actions or non-dependent adult children. Its immunity is confined to claims by employees and dependents receiving workers' compensation benefits. The General Assembly has drawn sharp and deliberate boundaries in both statutes. Extending exclusivity to bar adult non-dependent children's wrongful death claims transforms the WCA from a balanced remedial scheme into a shield of absolute immunity, protecting the employer without providing any corresponding benefit to plaintiffs like Ms. Ledford.

In part, the majority justifies the harsh result it has imposed over an unsubstantiated fear of a windfall to people like Ms. Ledford. The majority argues that Ms. Ledford's interpretation of the interplay between the WCA and WDA "produces results at odds with the spirit of the [WCA]," Majority Op. at 24–25 n.22, and takes umbrage at the possibility that "a non-dependent child could secure more compensation via a favorable judgment for a wrongful death claim than her dependent counterparts who would not be entitled to receive the type of damages that the WDA contemplates." *Id.*

*First*, the majority's concern that a non-dependent adult child might recover "more" under the WDA than a dependent might under the Workers' Compensation Act is not a legal justification – it is a policy objection. That policy judgment is the prerogative of the General Assembly, not ours. We should refrain from imposing our concept of what is sound policy in this arena and leave that task to the General Assembly, where it belongs.

*Second*, the General Assembly has drawn different remedies for different injuries, available to different beneficiaries, under two distinct statutory schemes. Compensation

27

under the Workers' Compensation Act is automatic and based on formulas tied to wages and dependency. Recovery under the Wrongful Death Act, by contrast, is discretionary, capped, and subject to proof at trial. The idea that a non-dependent child might "secure more compensation" is speculative at best. A dependent receives certain guaranteed compensation; a wrongful death plaintiff like Ms. Ledford may recover nothing at all. So, who is to say that the WDA claim is superior to a dependent's WCA claim? Again, this is a policy question for the General Assembly to answer.

More fundamentally, despite the majority's skepticism, the General Assembly has already made that policy decision when it enacted CJP § 3-904(e). There is nothing in either the Workers' Compensation Act or the Wrongful Death Act to suggest the General Assembly feared or disapproved of a so-called "windfall" to non-dependent children or that non-dependent children would or could receive a greater award than a WCA dependent. To the contrary, by enacting CJP § 3-904(e), the General Assembly deliberately extended noneconomic recovery to this very group. Had the General Assembly believed it improper for non-dependent adult children to recover noneconomic damage awards that might exceed a dependent's wage-based benefits, it would have said so. Instead, it abolished the pecuniary loss rule in CJP § 3-904(e), extending noneconomic damages precisely to that class the majority today disenfranchises. The majority, by contrast, has handed employers a windfall at the expense of their workers.

The majority cites *Zukowski v. State*, 490 Md. 243, 268 (2025), Majority Op. at 25 n.22, for the proposition that somehow giving Ms. Ledford $0 for the loss of her father is

28

the equitable result and reflects a deliberate choice by the General Assembly elevate people financially dependent on decedents. But that reading mischaracterizes both *Zukowski* and its relevance here. *Zukowski* involved the calculation of attorneys' fees in a workers' compensation award and rejected an interpretation of the statute that would have allowed fees to consume the entirety of a claimant's compensation. *Zukowski*, 490 Md. at 251–52. That decision turned on the General Assembly's express purpose of ensuring that *injured workers themselves* retained meaningful compensation. *Id.* at 268. It did not involve the interaction of distinct statutory schemes, nor did it authorize courts to rewrite clear statutory language to equalize remedies across unrelated statutes. Here, we are not interpreting a fee provision internal to the WCA; we are reconciling two remedial statutes with different beneficiaries and different purposes. *Zukowski* does not support nullifying an otherwise valid wrongful death claim based solely on speculative comparisons between a remedy under the WCA versus a remedy under the WDA. If anything, it underscores the principle that legislative design – not what judges prefer – must govern statutory outcomes.

*Third*, the majority's concerns about a "double recovery" are misplaced. Reading the majority's opinion, one could be excused for believing that this is the very first time this Court has had the occasion to deal with the possibility of a wrongful death award resulting in a double recovery to the plaintiff or a double liability to the defendant. Not so. In the context of survivorship actions where, unlike here, there is an actual risk of a "double recovery," this precise contention was raised and rejected by this Court. As we explained in *Eagan v. Calhoun*, 347 Md. 72, 82 (1997) the wrongful death statute was

29

enacted to permit surviving relatives and beneficiaries "to recover damages for [their] own loss accruing from the [] death" of the decedent. "If . . . there are two separate, distinct and independent causes of action arising out of the same wrongful or negligent act, then . . . they may be prosecuted concurrently[,]" *Stewart*, 104 Md. at 340, because "[n]o part of either [cause of action] is embraced in the other." *Globe Am. Cas. Co.*, 76 Md. App. at 539 (quoting *Craft*, 237 U.S. at 658). The problem of "double recovery" is avoided where, as in the instant matter, there can be no duplication in the elements of damages sought by the two actions. *See* W. Keeton, *Prosser & Keeton on Torts* (5th ed. 1984) at 957–58 ("It is usually held that actions may be prosecuted under both death and survival acts, and that an action under one cannot be defended on the ground that recovery or settlement has been received under the other, at least so long as the beneficiaries are different and there is no duplication in the elements of damages.") (cleaned up). In *Spangler v. McQuitty*, for example, we "disagreed with [the] contention that permitting the wrongful death action would result in double recovery," noting that any overlap "could be resolved on a case-by-case, damages-by-damages basis." *Spangler*, 449 Md. at 46.

In this case, although the death of Mr. Ledford in his workplace originated from one alleged wrongful act by Jenway, it spawned two separate claims against them that are quite distinct with no part of either being embraced in the other: one for workers' compensation if Mr. Ledford had any dependents under the WCA and one for wrongful death to his adult, non-dependent children under the WDA. A careful reading of the statutory schemes demonstrates that no one can recover the same benefit twice. The exclusivity provision of

30

the WCA protects employers from double recovery of the *same* remedy, not from parallel obligations arising under separate statutory schemes compensating distinct injuries to *different* classes of survivors. As noted above, dependents under the WCA receive *wage-based death benefits* only, capped and tied to their degree of financial dependency. Non-dependent adult children under the WDA, like Ms. Ledford, are entitled only to *noneconomic solatium damages*. Thus, there is no impermissible "double recovery" because the claims arise from different injuries and provide different types of compensation. Jenway's liability under the WCA ceases after it pays dependents their statutorily prescribed death benefits. Separately, Jenway's liability under the WDA arises only for noneconomic damages to non-dependents. Thus, as recognized by the United States Supreme Court, "[o]ne begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong." *Craft*, 237 U.S. at 658.

The same rationale as to why there is not a "double recovery" here applies to the majority's claim of "double liability." Even in the majority's hypothetical where a decedent leaves both dependents and non-dependents, an employer's exposure would never exceed that of what any tortfeasor would pay in a single wrongful death suit where the typical plaintiff would be entitled to economic loss and noneconomic losses, to be apportioned to all the plaintiffs. The General Assembly's bifurcation of remedies across the WCA and WDA merely formalizes this dual compensation by assigning different types of damages to different beneficiary classes. This is hardly paying the same benefit twice;

31

it is honoring two distinct, statutory schemes, reading them *in pari materia*, and not subordinating one scheme to the other.

There is simply no risk of overlapping claims between WCA dependents and WDA beneficiaries notwithstanding the majority's efforts to construct one. If this Court did not bar concurrent actions on the premise of "double recovery" in survivorship cases – where the potential for overlapping claims is far greater than the potential for overlap in workers' compensation claims – then it *a fortiori* fails in the workers' compensation context here because there is no common element to offset, no overlapping category of damages, and thus no conceivable risk of duplicative awards. By permitting the Respondent to bar the WDA claim here, the majority is setting aside both our precedents and the General Assembly's carefully calibrated scheme.

The consequences of the majority's opinion are troubling. In *Victory Sparkler* and its progeny, including *Knoche*, the plaintiffs were not deprived of a remedy – they simply could not select two remedies (or elect remedies). Here, Ms. Ledford is left with nothing. That is not what the General Assembly intended when it enacted either the WCA or the WDA. If the General Assembly intended to immunize employers for all claims of workplace deaths caused due to their negligence, it could have done so expressly. It simply defies basic tenets of statutory interpretation to impute an intent to immunize all employers from wrongful death liability simply because the decedent was a covered employee. The Workers' Compensation Act does not mention CJP § 3-904(e), non-dependent beneficiaries, or solatium damages. To read L&E § 9-509 so broadly that it sweeps those

concerns aside is to rewrite the statute in service of a policy outcome the General Assembly neither chose nor endorsed. We should be wary of interpreting a remedial statute in a way that obliterates the remedy provided in another remedial statute, especially when doing so leaves a claimant with no redress at all. *See* Dissenting Op. of Watts, J., at 16–19 (discussion on the application of Article 19 of the Declaration of Rights to this case).

### III.

For all of the foregoing reasons, I would reverse the judgment of the Circuit Court for Baltimore County and allow this case to proceed to trial. Plainly stated, CJP § 3-904(e) affords Ms. Ledford an unqualified statutory remedy – one that neither the text of the Workers' Compensation Act nor any prior decision had ever expressly prohibited before today. Upholding an entrenched "workers' comp bar" as a matter of tradition, judicial inertia or based on faithful adherence to dicta, cannot override the clear text and remedial purpose of both the WCA and Section 3-904(e) of the WDA. Whatever "Grand Bargain" the majority believes was struck with employers 109 years ago, that bargain does not encompass the remedial expansion enacted in 1997, which specifically conferred wrongful death benefits on non-dependent adult children under CJP § 3-904(e). "We have repeatedly held that remedial statutes are to be construed 'liberally' in favor of claimants, to suppress the evil and advance the remedy." *Cathey v. Bd. of Rev.*, 422 Md. 597, 605 (2011). Here, the General Assembly chose to confer a remedy to people like Ms. Ledford in 1997 and the majority chooses to revoke it. Respectfully, I believe that this is wrong and flatly contradicts our mandate to "advance the remedy." I dissent.

33

Justice Biran has authorized me to state that he joins in this dissent.